**In the Matter of the PATERNITY OF J.J., A Child Born Out of Wedlock by Next Friend, Garnet E.S., Appellant–Petitioner,**

v.

**Wess A. J., Appellee–Respondent.**

No. 08A02–0903–JV–280.

Court of Appeals of Indiana.

Aug. 25, 2009.

---

4. Tooley does not specify who would be qualified to determine whether a cat has suffered severe pain or injury.

## OPINION

MATHIAS, Judge.

Garnet S. ("Mother") appeals the Carroll Superior Court's modification of physical custody of her minor child to Wess J. ("Father"). She raises two issues, but we address only the following dispositive issue:[1] whether the trial court abused its discretion when it modified custody because of Mother's relocation without considering all of the factors as required under Indiana Code section 31–17–2.2–1(b). Concluding that the trial court was required to hear evidence on and consider all of the factors enumerated in section 31–17–2.2–1(b), we remand for proceedings consistent with this opinion.

### Facts and Procedural History

J.J. was born on October 16, 2005. On February 12, 2007, Father's paternity to J.J. was established and Father was awarded visitation consistent with the Indiana Parenting Time Guidelines. Father was also ordered to pay $55.11 per week in child support.

On January 6, 2009, Mother filed a notice of intent to relocate J.J. to Florida due to her husband's naval service. On February 9, 2009, Father sent a letter to the trial court, which the court considered to be a petition for modification of custody, child support, and visitation. Appellant's App. pp. 17–19.

At the custody hearing held on March 10, 2009, neither party was represented by counsel. Father testified that he is J.J.'s primary caretaker. Father also presented evidence that from February of 2007 to December 31, 2007, he had J.J. for 271 days, in 2008 he had J.J. for 274 days, and

Florence Anne Briggs, Briggs Law Office, Flora, IN, Attorney for Appellant.

---

1. Mother also argues that the trial court abused its discretion when it modified custody of J.J. and awarded physical custody of J.J. to Father and challenges the trial court's characterization of Father as J.J.'s "de facto custodian."

from January 1 to February 9, 2009, he had J.J. for 32 days. Tr. p. 3. Father stated that he provided clothes, diapers, and other necessities for J.J. *Id.* at 6. However, Father admitted that he did not pay his court-ordered child support. Mother stated that Father watched J.J. because she worked two jobs and Father was unemployed. She testified, "I give him first chance since he was not working if he wanted to watch her so I could work and not have to take her to a babysitter." *Id.* at 9.

On March 15, 2009, the trial court entered the following order modifying custody:

> ... On February 12, 2007, the mother was granted custody of [J.J.] and the father was granted parenting time in accordance with the parenting time guidelines. [Mother] will be relocating to Georgia as a result of a change in the assignment of her husband by the military to a base in Florida. Consideration of proposed relocation of a child is a factor in determining whether to modify custody. [Citation omitted].
>
> The father has had [J.J.] for parenting time on all or part of 271 days in 2007, 274 days in 2008, and on 32 days from January 1 to February 11, 2009. [J.J.] has stayed in the home of her father more than one-half of the overnights. If [J.J.] were to relocate to Georgia with her mother, it would result in a significant change in her relationship with her father. Given that the father has been the "defacto custodial parent," it would be the same as a change of custody. "One of the most significant elements of stability in a child's life is the child's primary caretaker—the person who cooks his meals, puts him to bed, and cares for him on a daily basis." [Citation omitted]. During the past two years,

> the primary caretaker has been her father.
>
> [J.J.] has a close relationship with her grandparents, two sisters and a brother, aunts, and cousins from both sides of her family who reside in Indiana. A move with her mother to Georgia would also have a significant impact upon [her] relationship with those other than her parents who are closest to her.
>
> The court finds, based upon the substantial changes that will result in the relocation of the child to Georgia set forth above that it is in the best interest of [J.J.] for custody to be modified.

Appellant's App. p. 5. The trial court modified custody by awarding joint custody to Mother and Father, with Father having primary physical custody and Mother having parenting time in accordance with the parenting time guidelines. Mother now appeals. Additional facts will be provided as necessary.

### Standard of Review

Initially, we observe that Father failed to file an appellee's brief. We will not undertake the burden of developing arguments for the appellee. *Painter v. Painter*, 773 N.E.2d 281, 282 (Ind.Ct.App.2002). Applying a less stringent standard of review, we may reverse the trial court if the appellant establishes prima facie error. *Id.* Prima facie error is defined as at first sight, on first appearance, or on the face of it. *Id.*

Moreover, we review custody modifications for an abuse of discretion. *Apter v. Ross*, 781 N.E.2d 744, 757 (Ind.Ct. App.2003), *trans. denied.* We will not reweigh the evidence or judge the credibility of the witnesses. Rather, we consider only the evidence most favorable to the judgment and any reasonable inferences from

that evidence. *Leisure v. Wheeler*, 828 N.E.2d 409, 414 (Ind.Ct.App.2005).

## Discussion and Decision

First, we observe that our supreme court has expressed a "preference for granting latitude and deference to our trial judges in family law matters." *In re Marriage of Richardson*, 622 N.E.2d 178, 178 (Ind.1993). The rationale for this deference is that appellate courts "are in a poor position to look at a cold transcript of the record, and conclude that the trial judge ... did not properly understand the significance of the evidence, or that he should have found its preponderance or the inferences therefrom to be different from what he did." *Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind.2002) (citation omitted).

Custody modifications are generally governed by Indiana Code section 31–17–2–21 (2008), which provides that a custody modification is permitted only if the modification is in the best interests of the child and there has been a substantial change in one or more of the factors identified in Indiana Code section 31–17–2–8 (2008).

In 2006, our General Assembly added to the Family Law Title of the Indiana Code an entire chapter concerning the relocation of a custodial parent. *See* Ind.Code ch. 31–17–2.2 (2008). This new chapter was recently summarized by our Supreme Court in *Baxendale v. Raich*, 878 N.E.2d 1252 (Ind.2008):

> "Relocation" is "a change in the primary residence of an individual for a period of at least sixty (60) days," and no longer requires a move of 100 miles or out of state. *Id.* § 31–9–2–107.7. A "relocating individual" is someone who "has or is seeking: (1) custody of a child; or (2) parenting time with a child; and intends to move the individual's principal residence." *Id.* § 31–9–2–107.5. A "nonrelocating parent" is someone "who has, or

is seeking: (1) custody of the child; or (2) parenting time with the child; and does not intend to move the individual's principal residence." *Id.* § 31–9–2–84.7. Upon motion of either parent, the court must hold a hearing to review and modify custody "if appropriate." *Id.* § 31–17–2.2–1(b). In determining whether to modify a custody order, the court is directed to consider several additional factors that are set out in section 31–17–2.2–1(b) and are specific to relocation. In general, the court must consider the financial impact of relocation on the affected parties and the motivation for the relocation in addition to the effects on the child, parents, and others identified in Section 8 as relevant to every change of custody.

*Id.* at 1255–56 (footnotes omitted).

Under Chapter 2.2, there are two ways to object to a proposed relocation: a motion to modify a custody order under Indiana Code section 31–17–2.2–1(b), and a motion to prevent the relocation of a child under Indiana Code section 31–17–2.2–5(a). *See Baxendale*, 878 N.E.2d at 1256 n. 5. If the non-relocating parent does not file a motion to prevent relocation, then the relocating parent with custody of the child may relocate. *Id.* If the non-relocating parent does file a motion to prevent relocation, then the relocating parent must first prove that "the proposed relocation is made in good faith and for a legitimate reason." *Id.* (quoting I.C. § 31–17–2.2–5(c)). If this burden is met, then the non-relocating parent must prove that "the proposed relocation is not in the best interests of the child." *Id.* (quoting I.C. § 31–17–2.2–5(d)). Under either a motion to prevent relocation or a motion to modify custody, if the relocation is made in good faith "both analyses ultimately turn on the 'best interests of the child.'" *Id.*

The custodial parent's relocation does not require modification of a custody order. However, when the non-relocating parent seeks custody in response to a notice of intent to relocate with the child, the court shall take into account the following factors in considering the proposed relocation:

(1) The distance involved in the proposed change of residence.

(2) The hardship and expense involved for the nonrelocating individual to exercise parenting time or grandparent visitation.

(3) The feasibility of preserving the relationship between the nonrelocating individual and the child through suitable parenting time and grandparent visitation arrangements, including consideration of the financial circumstances of the parties.

(4) Whether there is an established pattern of conduct by the relocating individual, including actions by the relocating individual to either promote or thwart a nonrelocating individual's contact with the child.

(5) The reasons provided by the:

(A) relocating individual for seeking relocation; and

(B) nonrelocating parent for opposing the relocation of the child.

(6) Other factors affecting the best interest of the child.

Ind.Code § 31–17–2.2–1(b). "The court may consider a proposed relocation of a child as a factor in determining whether to modify a custody [or] parenting time order[.]" Ind.Code § 31–17–2.2–2(b).

We note at the outset that, in modifying custody of J.J. and awarding physical custody of J.J. to Father, the trial court characterized Father as the "defacto custodial parent." It is not clear whether the trial court considered Father a "de facto custo-dian" as that term is defined in Indiana Code section 31–9–2–35.5. Although the evidence supports the conclusion that Father was J.J.'s primary caregiver, the evidence does not support the conclusion that Father financially supported J.J., and therefore, if the trial court considered Father a "de facto custodian," it abused its discretion. *See id.*

On the other hand, the trial court may have been commenting only on the existing relationship between Father and J.J. While the relationship between the nonrelocating parent and the child is clearly a relevant consideration, *see* Ind.Code § 31–17–2.2–1(b)(3), it is also important that the trial court consider the specific circumstances surrounding that relationship. Father was J.J.'s primary caregiver largely— if not solely—because Father was not employed and was not paying child support as he was ordered. Mother therefore had to work two and sometimes three jobs to support J.J. and was complying with the Indiana Parenting Time Guidelines by offering Father the right of first refusal to provide child care when she was working. *See* Ind. Parenting Time Guideline I.C.3. Mother should not be penalized for doing what she was obligated to do, especially when Father was not fulfilling all of his obligations. In short, the trial court should consider not only the existing relationship between Father and J.J. but also the circumstances giving rise to that relationship.

In *Baxendale*, our supreme court held that a change in custody may be ordered due to relocation even if there is not a substantial change in one of the factors enumerated in section 31–17–2–8. 878 N.E.2d at 1256–57. The court observed:

First, chapter 2.2 [the relocation chapter] is a self-contained chapter and does not by its terms refer to the general change of custody provisions. Second, the relocation chapter introduces some

new factors that are now required to be balanced, but also expressly requires consideration of "other [ ] factors affecting the best interest of the child." I.C. § 31–17–2.2–1(b)(6). The general custody determination required under Section 8 is to find "the best interests of the child" by examining the factors listed in that section. As a result, chapter 2.2 incorporates all of the Section 8 considerations, but adds some new ones. Because consideration of the new factors might at least theoretically change this balance, the current statutory framework does not necessarily require a substantial change in one of the original Section 8 factors. Finally, section 31–17–2.2–2(b) of the relocation chapter expressly permits the court to consider a proposed relocation of a child "as a factor in determining whether to modify a custody order." Because section 31–17–2.2–1(b) already contains a list of relocation-oriented factors for the court to consider in making its custody determination, section 31–17–2.2–2(b) seems to authorize a court to entertain a custody modification in the event of a significant proposed relocation without regard to any change in the Section 8 factors. In most cases the need for a change in a Section 8 factor is likely to be academic because a move across the street is unlikely to trigger opposition, and a move of any distance will likely alter one of the Section 8 factors. For example, Section 8 requires evaluation of the effect of relocation on the interaction between the child and other individuals and the community. It is hard to imagine a relocation of any distance where there is no effect on the "interaction" of parents, etc. with the child or the child's adjustment to home, school, and community.

*Id.* at 1257.

Citing *Baxendale* and *Wolljung v. Sidell*, 891 N.E.2d 1109 (Ind.Ct.App.2008),

Mother argues that the trial court committed reversible error by failing to consider all the enumerated factors in the relocation statute. When a motion to modify custody is filed in response to a notice of intent to relocate, the trial court is required to consider the factors listed in Indiana Code section 31–17–2.2–1(b). *Wolljung*, 891 N.E.2d at 1112.

■ In *Wolljung*, Mother, the custodial parent, informed Father of her intent to move their child to Arkansas. In response, Father filed a motion to modify custody, which the trial court granted. On appeal, we reversed the modification after noting that the parties presented evidence of some, but not all of the factors enumerated in section 31–17–2.2–1(b). Specifically, the parties did not direct our court to any evidence in the record

> regarding the expense involved for Father to exercise parenting time, and there is only indirect evidence, if any, regarding the hardship for Father to exercise visitation if S.S. were to relocate with Mother. Moreover, although the Connor Custody Evaluation addresses the effect on S.S. of relocating to Arkansas, the parties do not point to any evidence in the record regarding the feasibility of preserving the relationship between Father and S.S. in the event of relocation.

*Id.* at 1113. Consequently, we observed, "it does not appear from the record of the hearing or the order that the parties or the trial court addressed each of the factors listed in Indiana Code Section 31–17–2.2–1(b), at the hearing on Father's motion to modify custody." *Id.*

Noting the interplay between the custodial modification statute and the relocation statutes, and the specific command of the

General Assembly as stated in the relocation statute, our court concluded that the trial court is required to consider the enumerated factors listed in section 31–17–2.2–1(b), and the court cannot do so without such evidence in the record. *Id.* Therefore, "the parent seeking to modify a custody order due to the other parent's relocation must present evidence on each of the statutory factors." *Id.* Because the record in *Wolljung* did not demonstrate that the parties or trial court fully considered or took into account the requisite statutory factors, we remanded the case to the trial court with instructions to conduct another hearing on Father's motion to modify custody and to hear evidence on each of the statutory factors. *Id.*

We are compelled to reach the same result in the case before us. First, we observe that the trial court's order does not lead us to the conclusion that the court considered each factor listed in section 31–17–2.2–1(b). As Mother notes in her brief, the trial court's order does not address the hardship and expense involved for Father to exercise parenting time, the feasibility of preserving the relationship between Father and J.J. through suitable parenting time, the financial circumstances of the parties, and whether Mother has engaged in a pattern of conduct to either promote or thwart Father's contact with J.J. *See* Br. of Appellant at 17; Appellant's App. pp. 4–5.

The parties proceeded pro se at the custody hearing, and both failed to present evidence on each of the statutory factors. There is scant evidence in the brief record regarding the parties' respective financial circumstances.[2] Moreover, the parties did not present evidence addressing the hardship and expense involved for Father to exercise parenting time and the feasibility of preserving the relationship between Father and J.J. through suitable parenting time.[3]

Because the record before us does not lead us to the conclusion that the parties or the trial court fully considered the enumerated factors listed in section 31–17–2.2–1(b), we remand this case to the trial court with instructions to conduct another hearing on Father's motion to modify custody and to hear evidence on each of the statutory factors. Absent exigent circumstances, the court shall order the parties to maintain the status quo pending the outcome of a new hearing. *See Wolljung*, 891 N.E.2d at 1113.

Remanded for proceedings consistent with this opinion.

DARDEN, J., and ROBB, J., concur.

---

**2.** Father testified that he is unemployed, but also stated he makes money working out of his garage. Tr. p. 8. From the record, we can reasonably infer that in 2008, Father reported income totaling $14,000 and Mother reported income totaling $54,000. Tr. p. 33. This was the only evidence presented regarding the parties' current financial circumstances.

**3.** We encourage parties facing issues involving the custody of children to obtain counsel to aid in the litigation of custody disputes. Because the court's order has such a profound effect on the lives of the parties and their children, we cannot emphasize enough the importance of presenting sufficient evidence and developing an adequate record.