**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

May 20 2014, 9:05 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ANDREW J. SICKMANN**
Boston Bever Klinge Cross & Chidester
Richmond, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN RE THE PATERNITY OF J.W.: | ) | |
| | ) | |
| A.P. (Mother), | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 89A01-1312-JP-549 |
| | ) | |
| A.W. (Father), | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE WAYNE CIRCUIT COURT
The Honorable David A. Kolger, Special Judge
Cause No. 89C01-0410-JP-63

**May 20, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

A.P. ("Mother") filed a notice of intent to relocate from Wayne County to Levittown, New York, with her minor child, J.W. Although A.W. ("Father") did not file a motion to prevent the relocation, the trial court held a hearing on the issue on its own motion. Following the hearing, the trial court denied Mother's request, concluding that Mother failed to show a good faith and legitimate reason for the proposed relocation. The trial court did not reach the issue of whether the proposed relocation is in J.W.'s best interest. Mother now appeals. Concluding that Mother met her burden to show a good faith and legitimate reason for relocating, we reverse the trial court's order and remand for further proceedings to determine whether the proposed relocation is in J.W.'s best interest.

**Facts and Procedural History**

J.W. was born to Mother on September 21, 2004. On June 10, 2005, the trial court entered an order establishing Father's paternity. The trial court awarded Mother custody of J.W., and Father was granted parenting time and ordered to pay child support. Mother, J.W., and Father all resided in Richmond, Indiana. In January 2007, Mother filed a notice of intent to relocate from Richmond to Florida. Father consented to the relocation and, following a hearing, the trial court entered an order granting Mother's request to relocate. Apparently, however, Mother decided not move to Florida and remained in Indiana.

In 2008, Father was twice found in contempt of court for failure to pay child support. Thereafter, in September 2009, Mother filed a notice of intent to relocate to Indianapolis. Mother failed to properly serve Father with notice as required. Mother filed another notice of

2

intent to relocate to Indianapolis in February 2010, but again failed to properly serve Father with notice as required. During this time, Father was twice found in contempt of court for failure to pay child support.

Despite her failure to properly serve Father with notice of her intent to relocate to Indianapolis, Mother did move with J.W. to Indianapolis in 2010 and attended the International Business College Dental Assistant Program. In response to her move, Father filed a petition for contempt against Mother. Mother was found in contempt and ordered to comply with the Indiana Parenting Time Guidelines as they pertained to transportation of J.W. for parenting time access purposes. Following a review hearing, the trial court determined that Mother had complied with the court's compliance order and dismissed the contempt citation. Soon thereafter, Father received his fifth and sixth contempt citations for failure to pay child support. In 2011, Mother returned to Richmond with J.W. after completing her degree.

On June 14, 2013, Mother filed a notice of intent to relocate to New York and properly served Father with such notice. In the notice, Mother stated that she had been offered gainful employment as a dental assistant in the New York area, that the wages for such employment far exceeded her current wages, that she has multiple family members in and near the community where she intends to move, and that she had verified the elementary school that J.W. would attend. Although Father did not file an objection to Mother's proposed relocation, the trial court set the matter for an evidentiary hearing. Mother appeared with counsel, and Father appeared pro se. After the hearing, the trial court entered

3

its order denying Mother's petition to relocate. Specifically, the trial court concluded that Mother did not meet her burden to prove that her relocation request was made in good faith and for a legitimate purpose. The trial court did not make a determination regarding whether the proposed relocation was in J.W.'s best interest. Mother subsequently filed a motion to correct error that was denied by the trial court. This appeal ensued.[1]

### Discussion and Decision

We must begin by noting that Father did not submit an appellee's brief. Under such circumstances, we do not undertake the burden of developing arguments for him. *In re Paternity of J.J.*, 911 N.E.2d 725, 727 (Ind. Ct. App. 2009). We apply a less stringent standard of review and may reverse the trial court if Mother establishes prima facie error. *Id.* Prima facie error is defined as at first sight, on first appearance, or on the face of it. *Id.*

Here, although neither party requested specific findings of fact and conclusions thereon, the trial court sua sponte made numerous findings in determining that Mother's relocation request was not made in good faith and for a legitimate purpose. Our standard of review is well settled:

> Pursuant to Indiana Trial Rule 52(A), we do not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of witnesses. Where, as here, the findings and conclusions are entered sua sponte, the specific findings control only as to the issues they cover, while a general judgment standard applies to any issues upon which the trial court has not found, and we may

---

[1] Mother and Father apparently rekindled their relationship at some point, and on August 27, 2012, Mother delivered a second son, M.W. Mother has filed a separate paternity proceeding against Father in the Wayne Circuit Court under cause number 89C01-1309-JP-131. As of the date of the trial court's current order denying Mother's petition to relocate, Mother had not filed a notice of intent to relocate under the cause number relating to M.W.

4

affirm a general judgment on any theory supported by the evidence adduced at trial.

*Kietzman v. Kietzman*, 992 N.E.2d 946, 948 (Ind. Ct. App. 2013) (citations and quotation marks omitted).

In appealing the denial of her petition to relocate to New York, Mother claims specifically that the trial court clearly erred when it determined that her request was not made in good faith and for a legitimate reason. Indiana Code Section 31-17-2.2-1(a) provides that a parent wishing to relocate must file a notice of intent to move with the clerk of the court that issued the custody order or parenting time order, or the court that has jurisdiction over the legal proceedings concerning the custody of or parenting time with a child, and must send a copy of the notice to any nonrelocating parent. A nonrelocating parent may object to a proposed relocation in either of two ways: by filing a motion to modify the custody order or by filing, within sixty days of receipt of the notice, a motion to prevent relocation of the child pursuant to Indiana Code Section 31-17-2.2-5(a). *Baxendale v. Raich*, 878 N.E.2d at 1252, 1256 n.5 (Ind. 2008). On the request of either party, the trial court shall hold a full evidentiary hearing to grant or deny a relocation motion. Ind. Code § 31-17-2.2-5(b).

We note that our legislature has provided that "[i]f the nonrelocating parent fails to file a motion under subsection (a), the relocating individual who has custody of the child may relocate to the new residence." Ind. Code § 31-17-2.2-5(e). In the instant case, Father is not represented by counsel, and he did not pursue either of the contemplated avenues to object to Mother's proposed relocation. Moreover, neither party requested an evidentiary hearing. However, likely due to Father's pro se status, the trial court set the matter for an evidentiary

5

hearing on its own motion. Mother does not challenge this procedure by the trial court. Consequently, we will proceed to the merits of her relocation request.

Upon making a relocation motion, "[t]he relocating individual has the burden of proof that the proposed relocation is made in good faith and for a legitimate reason." Ind. Code § 31-17-2.2-5(c). If the relocating parent meets that burden, "the burden shifts to the nonrelocating parent to show that the proposed relocation is not in the best interest of the child." Ind. Code § 31-17-2.2-5(d). Indiana Code Section 31-17-2.2-1(b) provides that in determining whether to permit a relocation, the court shall take the following factors into consideration:

(1) The distance involved in the proposed change of residence.

(2) The hardship and expense involved for the nonrelocating individual to exercise parenting time.

(3) The feasibility of preserving the relationship between the nonrelocating individual and the child through suitable parenting time …, including consideration of the financial circumstances of the parties.

(4) Whether there is an established pattern of conduct by the relocating individual, including actions by the relocating individual to either promote or thwart a nonrelocating individual's contact with the child.

(5) The reasons provided by the:

(A) relocating individual for seeking relocation; and

(B) nonrelocating parent for opposing the relocation of the child.

(6) Other factors affecting the best interest of the child.

6

"The '[o]ther factors affecting the best interest of the child' include, by implication, the factors set forth for custody determinations and modifications under Indiana Code Section 31-17-2-8." *T.L. v. J.L*, 950 N.E.2d 779, 785 (Ind. Ct. App. 2011).

Regarding the first prong of the relocation standard, the relocating individual's burden to prove that the proposed relocation is made in good faith and for a legitimate reason, this Court has determined that "the statute requires that a legitimate reason be objectively shown, and that by requiring that the relocation be in good faith, demands that the objective reason be more than a mere pretext." *Id.* at 787. We concluded that "it is common in our society that people move to live near family members, for financial reasons, or to obtain or maintain employment," and therefore these and similar reasons "are what the legislature intended in requiring that relocation be for 'legitimate' and 'good faith' reasons." *Id*. at 787-88. Noting that the resolution of relocation disputes ultimately turns on a judicial determination of the best interest of the child, we cautioned that the requirement of a legitimate and good faith reason must not pose an inordinately high bar for a relocating parent to meet, as trial courts would too often be prevented from reaching the second prong of the relocation standard and appropriately deciding the dispute based on the best interest of the affected child. *Id*. at 787-88 (citing *Baxendale*, 878 N.E.2d 1256 n.5).

Mother argues that the trial court here set an inordinately high bar for her to meet with regard to proving the first prong of the relocation standard. She points to several of the trial court's findings that she claims are clearly erroneous and do not support the court's conclusion that her proposed relocation was not made in good faith or for a legitimate reason.

7

Upon review of the record, we must agree with Mother.  Specifically, the trial court found in relevant part:

> The Court finds Mother's "track record" for relocation is poor to say the least. Her relocation with the child to the state of Florida was brief and apparently unsuccessful.  Mother's second relocation with [J.W.] (and Mother's then fiancé) to Indianapolis, was again, apparently brief and unsuccessful.
>
> The Court finds it significant to note that this move would represent no less [than] the third school change for [J.W.] in the last few years. This pattern of relocating has forced [J.W.] to adapt repeatedly to new schools, new friends and most importantly new homes.
>
> Not withstanding [sic] his failure to pay child support as ordered, Father's contact with [J.W.] appears to this court to be regular and meaningful to both Father and child.  The Court is cognizant of Mother's depictions of Father's alleged lack of attention given to the needs of [J.W.].  However, the Court must consider Mother's words in that regard in light of her subsequent decision to bear a second child with Father.  This Court must therefore conclude, when it comes to Father's relationship (or lack thereof) with his son [J.W.], Mother's words stand in stark contrast to her actions regarding Father.

Appellant's App. at 20.

First, we find no support in the record for the trial court's finding as to Mother's poor relocation "track record" and its additional finding that the current move would represent a third relocation for J.W.  *See id*.  The record indicates that Mother filed a notice of intent to relocate to Florida in 2007, and the trial court granted that request to relocate.  However, there was no evidence presented at the evidentiary hearing regarding such relocation, including whether the relocation actually took place.  Indeed, in her motion to correct error and in her brief on appeal, Mother states that she never, in fact, moved to Florida and that she remained in Indiana.  Thus, it appears that in finding that Mother has a "pattern of

8

relocating," the trial court relied, in part, on an erroneous assumption that Mother relocated to Florida in 2007. *Id.*

Mother admits that she did relocate with J.W. to Indianapolis for twelve months in 2010 to attend International Business College, but again there was no evidence presented at the hearing regarding such relocation. Thus, there is no evidence in the record to support the trial court's statement that such relocation was "unsuccessful." *Id.* Under the circumstances, Mother has made a prima facie showing that the trial court's findings regarding her relocation history and the alleged effect on J.W. rely quite heavily on misplaced and erroneous assumptions unsupported by actual evidence in the record.

We similarly find misplaced the trial court's reliance on Mother's decision to bear a second child with Father. We are unclear as to how such decision is indicative of whether Mother's current relocation request was made in good faith or for a legitimate reason. Although perhaps indicative of both Mother's and Father's poor decisionmaking with regard to relationships, this fact, in and of itself, hardly reflects on whether Mother's proposed relocation to New York was made in good faith and for a legitimate reason.

Significantly, none of the trial court's aforementioned findings appear to be relevant to whether Mother's proposed relocation was objectively made in good faith and for a legitimate reason. While some of the court's findings, if supported by the evidence, would be relevant to a best-interest analysis, they have little place when considering the first prong of the relocation standard regarding the legitimacy of a proposed relocation.

Our review of the trial court's order reveals only one finding bearing relevance to the court's consideration of whether Mother's proposed relocation was made in good faith and for a legitimate reason. The court found,

> It is now Mother's stated intent to move to the state of New York to obtain gainful employment as a dental assistant. With that said, it's important to note that Mother is not currently employed in that capacity, but is working as a server at MCL cafeteria her in Richmond. Mother presented little or no evidence regarding the availability, or lack thereof, of such employment opportunities in the Richmond area.

*Id.* We agree with the Mother that the relevance of this finding is minimal when compared and balanced with the other evidence presented by Mother. Mother testified that she wished to move to Levittown, New York, to work as a dental assistant and to triple her current wage. Mother testified that she had previously worked in the dental field in Richmond and that it was extremely hard "to find jobs" in Richmond. Tr. at 6. She explained, in part, her belief that the licensing requirements regarding dental assistants are stricter in Indiana than in New York, which prohibited her from obtaining a similar high-paying position in Richmond.

Mother submitted a letter from a New Jersey dentist with whom she had met which essentially included an offer of employment for Mother upon her arrival in Levittown. The letter included a quoted wage that is substantially higher than Mother's current MCL server wage. Mother stated that her sister lives in Levittown, and that she planned to live with her sister, her brother-in-law, and their children while getting settled in Levittown. Mother stated that, in addition to her sister, she has aunts, uncles, and cousins who live in the area. Mother testified extensively regarding the financial help that her sister and extended family planned to give her with housing and childcare, and Mother submitted a letter from her sister

10

outlining the same. Mother discussed how childcare had been especially difficult and expensive in Richmond due her low-paying job and Father's failure to help her or to pay child support. Mother testified that the move to New York would give her better employment opportunities, improve her life financially, allow her kids to "be around family," and provide her kids an all-around "better childhood." *Id.* at 17.

Based upon the sparse record before us as well as Mother's uncontroverted arguments, we conclude that the familial and financial reasons cited by Mother and supported by the evidence are more than sufficient to satisfy her burden to prove that her relocation request was made in good faith and for a legitimate reason, and the trial court's conclusion to the contrary is clearly erroneous. *See, e.g.*, *T.L.*, 950 N. E.2d at 787-88 (holding that Mother's stated reasons of being closer to parents and grandmother, wanting to benefit from greater family support, the reduced financial burden of living rent-free in a family-owned house, and the opportunity for a new career were legitimate and good faith reasons); *H.H. v. A.A.*, 3 N.E.3d 30, 36 (Ind. Ct. App. 2014) (holding that Mother's stated reason for request to relocate to Hawaii, "to live and create a family life with [her husband]," was sufficient to prove her request was made in good faith and for a legitimate purpose); *Gilbert v. Gilbert*, No. 57A03-1308-DR-312, 2014 WL 1509213 (Ind. Ct. App. Apr. 17, 2014) (affirming trial court's conclusion that Mother's stated reason of getting a larger house in a better school district constituted a good faith reason for relocating), *pet. for reh'g pending*. Accordingly, we reverse the trial court's order denying Mother's petition to relocate.

This is not to say that Mother should be permitted to relocate with J.W. Because the trial court concluded that Mother had failed to meet her burden of proof, the burden never shifted to Father to prove that the proposed relocation is not in J.W.'s best interest, and consequently the trial court heard very little evidence and made no conclusion regarding J.W.'s best interest. We therefore remand to the trial court for further proceedings to consider the relevant factors pursuant to Indiana Code Sections 31-17-2.2-1 and 31-17-2-8 and to make an ultimate determination of Mother's relocation request on that basis.

Reversed and remanded.

BAKER, J., and BARNES, J., concur.