## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 20 2016, 6:21 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Bryan L. Ciyou
Darlene R. Seymour
Ciyou & Dixon, P.C.
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

David E. Baum
David E. Baum Law Office, P.C.
Chesterton, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In Re: the Marriage of S.B., *Appellant-Petitioner,* | December 20, 2016 |
| v. | Court of Appeals Case No. 64A03-1603-DR-533 |
| | Appeal from the Porter Superior Court |
| J.B., *Appellee-Respondent* | The Honorable Roger V. Bradford, Judge<br>The Honorable Mary A. DeBoer, Magistrate |
| | Trial Court Cause No. 64D01-1303-DR-2181 |

**Baker, Judge.**

[1]    S.B. (Mother) appeals the trial court's order granting primary physical custody of her child, B.B., to J.B. (Father). She raises three arguments: (1) the trial court failed to conduct the required statutory analysis for a relocating parent; (2) her due process rights were violated; and (3) the trial court erred by ordering her to pay a portion of Father's attorney fees. We find that the trial court failed to conduct the required statutory analysis, though we find no error on Mother's latter two arguments. Therefore, we reverse and remand so that the trial court can engage in the proper analysis and enter a new order to that effect.

## Facts

[2]    Mother and Father were married, and one child, B.B., was born of the marriage on May 27, 2010. Their marriage was dissolved on August 7, 2014. As part of its dissolution order, the dissolution court incorporated an agreement reached during mediation by the parties regarding custody and parenting time (the Mediation Agreement). In relevant part, the Mediation Agreement provides as follows:

- Mother and Father would have joint legal custody of B.B.
- Although the Mediation Agreement does not include a specific agreement regarding physical custody of B.B., it implied that B.B. would live with Mother and stated that Father would have parenting time every other weekend and one weeknight per week. Father also provided childcare to B.B. during Mother's weekday work hours.
- Father agreed to pay child support based upon an assumption that he would exercise 140 overnights with B.B. annually.
- The Indiana Parenting Time Guidelines would govern division of holiday parenting time, and "Mother shall be classified as the custodial

parent for the purpose of interpreting said guidelines, and for that purpose only." Appellant's App. p. 35.

- The parties agreed that the "parenting time schedule shall remain in effect through the date the parties' minor child commences kindergarten at which time the parties shall restructure parenting time to effectuate an equal division of the same based on the child's school schedule." *Id.*

In September 2014, Mother began searching for a more affordable home. She found a suitable option in North Judson, where Mother's parents lived, which was approximately twenty-five miles from her prior residence.

[3] In December 2014, Father made a feces shape out of Play-Doh, placed it so that it appeared to be coming out of B.B.'s bottom, took a picture of the event, and posted it to Facebook. Mother saw the picture, became alarmed, and contacted the Department of Child Services (DCS). She refused to permit Father to exercise his parenting time until DCS completed its investigation and report.[1] On December 19, 2014, Father filed pleadings with the court regarding the denial of his parenting time. The trial court issued a temporary restraining order requiring Mother to provide Father with his parenting time and a citation for contempt of court the same day.

[4] On January 7, 2015, Mother filed a notice of intent to relocate and a petition to modify parenting time based on the Play-Doh incident. On February 23, 2015, Father filed a motion for an order to prevent the relocation of B.B. and a

---

[1] DCS found that the allegations of abuse or neglect were unsubstantiated and no criminal charges were filed against Father as a result of the incident.

petition to modify custody, parenting time, and child support. On February 27, 2015, the trial court issued an interim order allowing Mother to relocate with B.B. but prohibiting her from enrolling the child in kindergarten. On November 10, 2015, Mother filed a motion seeking to have Father found in contempt because he had enrolled B.B. in kindergarten and failed to inform her, causing her to miss her son's first day of kindergarten.

[5] On February 23, 2016, the trial court held an evidentiary hearing on all pending motions. Mother was pro se at that hearing. In its order, which was entered on February 26, 2016, the trial court found and held, in relevant part, as follows:

> 27.    . . . The Court has considered the following:
>
> ***
>
> b.    Mother currently has "physical custody" of [B.B.] and would like the Court to make her the sole custodial parent. Father would like physical custody to be awarded to him.
>
> ***
>
> d.    [B.B.] interacts very well with both parents.
>
> ***
>
> e.    There was no evidence to refute the fact that [B.B.] has adjusted well to Mother's new residence in North Judson. . . .

g. [B.B.] is attending full day kindergarten in Father's . . . school district . . . . [B.B.'s] teacher has reported that [B.B.] is doing well at school. . . . Because of [B.B.'s] young age, the Court does not have any concerns that he would function well in either school system.

***

j. . . . Mother and Father have both conducted themselves in ways that have been (or are likely to have been) detrimental to [B.B.]

k. Father has done things which the Court finds ill-advised, immature and reckless.

***

l. Mother has her own issues in the Court's eyes.

  i. Perhaps it is because of Mother's employment with Family Services that colors Mother's perception that every scratch and bump on [B.B.] is suspicious. Unfortunately, Mother's means of dealing with her suspicions has manifested itself in an abundance of photographs being taken of the child to document his "injuries." The Court finds this disturbing in general and detrimental to [B.B.] because every time she poses him for another photo, it potentially raises questions in [B.B.'s] mind that

something is wrong—again. . . . Her excessive documentation demonstrated her willingness to use [B.B.] to further her cause in this custody dispute.

\*\*\*

29. The Court finds that Mother's relocation was made in good faith and for a legitimate reason. Her lease had expired on her residence, her roommate had moved away and the rent was due to increase to an extent Mother could not afford.

\*\*\*

32. Normally when relocation is an issue, once Mother proved that she had a legitimate reason to move, the burden would shift to Father to show that the proposed move was not in [B.B.'s] best interest.

33. Because the Court has previously determined that this matter is not actually a modification of custody issue but an initial determination of custody, the Court has reviewed and taken into consideration all of the relocation factors outlined in I.C. 31-17-2.2-2. Given the Court's decision to award physical custody to Father, it is unnecessary to analyze each relocation factor in this Order.

34. The Court finds after considering all relevant factors required by statute that Father is awarded sole physical custody of [B.B.]

Appellant's App. p. 11-15. The trial court ordered that Mother and Father would continue to share joint legal custody, set forth a detailed schedule of Mother's parenting time, ordered Mother to pay child support in the amount of $18 per week, and declined to find Mother in contempt for her decision to withhold parenting time from Father in December 2014. The trial court did not rule on Mother's motion to have Father found in contempt for enrolling B.B. in kindergarten and not informing her. Finally, the trial court ordered Mother to pay attorney fees to Father's attorney in the amount of $700. Mother now appeals.

## Discussion and Decision

## I. Custody Modification

Mother argues that the trial court erred by granting Father's petition to modify custody without considering all statutorily required factors. In its order, the trial court sua sponte entered findings of fact and conclusions of law. In reviewing the order, we first determine whether the evidence supports the findings; and second, whether the findings support the judgment. *Harris v. Harris*, 800 N.E.2d 930, 934-35 (Ind. Ct. App. 2003). But we owe no deference to the trial court's conclusions of law and will review those conclusions de novo. *Id.* at 935. We will reverse only if the trial court's order is clearly erroneous. *Id.*

If a parent intends to relocate, she must file a notice of her intent to move with the court that issued the custody or parenting time order already in place. Ind.

Code § 31-17-2.2-1(a).  In response, the non-relocating parent may file a motion seeking a temporary or permanent order to prevent the relocation of the child. I.C. § 31-17-2.2-5.  In many cases, one or both parents will also file a petition to modify custody and/or parenting time as a result of the relocation.  In ruling on a petition to modify in the context of a relocating parent, the trial court "*shall*" take the following factors into consideration:

(1) The distance involved in the proposed change of residence.

(2) The hardship and expense involved for the nonrelocating individual to exercise parenting time or grandparent visitation.

(3) The feasibility of preserving the relationship between the nonrelocating individual and the child through suitable parenting time and grandparent visitation arrangements, including consideration of the financial circumstances of the parties.

(4) Whether there is an established pattern of conduct by the relocating individual, including actions by the relocating individual to either promote or thwart a nonrelocating individual's contact with the child.

(5) The reasons provided by the:

(A) relocating individual for seeking relocation; and

(B) nonrelocating parent for opposing the relocation of the child.

(6) Other factors affecting the best interest of the child.

I.C. § 31-17-2.2-1(b) (emphasis added). If, however, the notice of relocation is filed in the context of an initial custody determination (as opposed to a modification of an already-existing order), then "the court *may* consider" the factors above. I.C. § 31-17-2.2-2(a) (emphasis added). In either case, there is a statutory burden-shifting analysis required when a motion seeking an order to prevent the relocation of a child is filed:

> (c) The relocating individual has the burden of proof that the proposed relocation is made in good faith and for a legitimate reason.

> (d) If the relocating individual meets the burden of proof under subsection (c), the burden shifts to the nonrelocating parent to show that the proposed relocation is not in the best interest of the child.

I.C. § 3-17-2.2-5.

[8] To determine how the trial court was required to proceed, therefore, we must determine whether its custody ruling constituted an initial custody order (as it found) or a custody modification in the context of a relocating parent (as Mother contends). First, we turn to the language of the trial court's original order, as found in the parties' Mediated Agreement. That Agreement explicitly stated that the parents would share joint legal custody. And although it did not make an explicit statement about physical custody, it clearly implied that B.B. would live with Mother, while Father would receive parenting time. Moreover,

Father's child support obligation was calculated on an assumption that he would exercise 140 annual overnights—less than 50%. However, Father also cared for B.B. during nearly every week day while Mother was at work. At the very least, therefore, the Mediated Agreement implied that the parties intended to share joint physical custody of the child.[2]

[9] We do not believe that either the trial court or the parents intended to leave the very important issue of B.B.'s physical custody unresolved. When the trial court entered its final dissolution decree, incorporating the Mediated Agreement, it had to have intended that to be a final order, disposing of all issues, including the crucial issue of physical custody of the child. It is necessarily true, therefore, that any subsequent order regarding custody or parenting time would be a modification of that initial order.[3]

[10] Having concluded that the trial court's order was a modification of an already-existing order regarding custody, parenting time, and child support, we must now consider the interplay between custody modification and a parent's plan to relocate. This Court has explained that interplay as follows:

> [O]ur supreme court addressed the statutory interplay between the Relocation Factors and the Best Interests Factors [in

[2] Mother insists that she was awarded physical custody of B.B. in the Mediated Agreement. We need not resolve this issue, however, as even if the parties agreed on joint physical custody, the subsequent order was a modification, meaning that the trial court erred.

[3] And indeed, Father clearly assumed as much, given that the motion that he filed—and that the trial court ruled upon—was a motion to *modify* custody and parenting time, rather than a motion for an initial custody order.

*Baxendale v. Raich*, 878 N.E.2d 1252 (Ind. 2008)]. Initial custody determinations are to be based on an analysis of the Best Interests Factors. *Id.* at 1254. In order to modify the initial custody decree, the trial court must find that modification is in the child's best interests *and* that "there has been 'a substantial change' in one or more of the [Best Interests Factors] identified in . . . the initial custody determination." *Id.* at 1255 (quoting I.C. § 31-17-2-21 (the Modification Statute)). If, however, the trial court reviews a request to modify custody *stemming from* a parent's plan to relocate, the court must assess the Relocation Factors, which "incorporate[ ] all of the [Best Interests Factors], but add[ ] some new ones." *Id.* at 1256-57. A parent's proposed relocation does not necessarily require a custody modification, and, in contrast to the Modification Statute, a relocation-based modification need not involve a substantial change to one of the original Best Interests Factors. *Id.*

*Jarrell v. Jarrell*, 5 N.E.3d 1186, 1191-92 (Ind. Ct. App. 2014) (emphases original), *trans. denied*. When a motion to modify custody is filed in response to the other parent's notice of intent to relocate, the trial court is required to fully consider all of the factors listed in Indiana Code section 31-17-2.2-1(b), and the failure to do so is reversible error. *E.g.*, *In re Paternity of J.J.*, 911 N.E.2d 725, 730-31 (Ind. Ct. App. 2009) (holding that modification of child custody was erroneous where trial court failed to fully consider each factor in relocation statute); *Wolljung v. Sidell*, 891 N.E.2d 1109, 1112-13 (Ind. Ct. App. 2008) (same).

[11] In the case before us, the trial court explicitly refused to apply the relevant relocation statutory provisions:

32.     Normally when relocation is an issue, once Mother proved that she had a legitimate reason to move, the burden would shift to Father to show that the proposed move was not in [B.B.'s] best interest.

33.     Because the Court has previously determined that this matter is not actually a modification of custody issue but an initial determination of custody, the Court has reviewed and taken into consideration all of the relocation factors outlined in I.C. 31-17-2.2-2. Given the Court's decision to award physical custody to Father, it is unnecessary to analyze each relocation factor in this Order.

Appellant's App. p. 15. In relevant part, the trial court had two motions before it. First, as to Father's motion to prevent B.B.'s relocation, which is governed by Indiana Code section 31-17-2.2-5, the trial court failed to apply the burden-shifting provision found in this statute, which requires that Father show that the proposed relocation was not in the child's best interest. Second, as to Father's motion to modify custody and parenting time, which is governed by Indiana Code section 31-17-2.2-1(b), the trial court failed to fully consider and analyze all of the mandatory relocation factors found in this statute.

[12]     It appears from the transcript that the parties each presented evidence related to all of the relocation factors. Therefore, an entirely new evidentiary hearing is not necessary. Instead, the trial court must apply the burden-shifting provision and fully analyze all of the relocation factors, reaching its conclusions based on the evidence in the record. We note that the trial court has already found that Mother met her burden of establishing that the relocation was made in good

faith and for a legitimate reason. The burden shifts, therefore, to Father. For the trial court to rule in Father's favor would require a finding that the relocation is not in B.B.'s best interest. We reverse and remand so that the trial court can draft and enter a new order.

## II. Due Process

[13] We will briefly address Mother's due process argument. Specifically, she contends that the trial court was prejudiced against her, that it failed to rule on her contempt allegations, and that the mediator breached confidentiality obligations when testifying at the hearing. As for the trial court's demeanor, our Supreme Court has noted that a "crusty demeanor" towards litigants is acceptable so long as it is applied even-handedly. *In re J.K.*, 30 N.E.3d 695, 698-99 (Ind. 2015). In this case, while the trial court at times expressed frustration with Mother, often stemming from the fact that she was proceeding pro se and uneducated in courtroom process, the trial court also expressed frustration with Father and his past behavior, particularly the Play-Doh incident. We do not find any of the trial court's behavior towards Mother in this case to indicate that it was biased against her, nor do we find that her due process rights were violated for this reason.[4]

---

[4] Mother also argues that the guardian ad litem was biased against her, but does not explain how that alleged fact would violate her due process rights. In any event, we find no support in the record for this allegation.

[14] Second, Mother argues that the trial court failed to rule on her motion to have Father held in contempt for enrolling B.B. in kindergarten. While Mother filed a motion to have Father held in contempt, she did not request that a rule to show cause be issued. As no rule to show cause was issued, the trial court would have committed reversible error had it found Father in contempt. *See Henderson v. Henderson*, 919 N.E.2d 1207, 1210-11 (Ind. Ct. App. 2010) (holding that if no rule to show cause is issued in compliance with Ind. Code section 34-47-3-5, then a person may not be held in indirect contempt). Additionally, at the start of the hearing, the trial court asked the parties to clarify all of the pending motions before it, and Mother did not include her motion for contempt in the list. Therefore, if nothing else, the trial court's failure to rule on the issue was invited error.

[15] Finally, Mother alleges that the mediator's testimony violated her rights because the mediator divulged confidential information. It is well established that evidence of conduct or statements made during mediation is not admissible and that this confidentiality requirement may not be waived by either party. A.D.R. Rule 2.11. Here, the mediator largely testified to basic facts: he was present at the mediation at issue and the parties reached a mediated agreement; the agreement presented to him at trial was the agreement they reached; and the agreement said what it said. Tr. p. 85-88. None of that testimony divulged confidential information or was in any way improper. On a couple of occasions, however, the mediator veered into what he believed the parties intended. Tr. p. 87 ("that was the only reference to—and it was an intentional

reference—that there would be no other distinction with respect to physical custody"), 88 ("there was always this understanding that there was going to be this shared parenting time and equal division of time"). That testimony was improper, as it implicitly divulged the content of the parties' negotiations. That said, we do not find that this de minimis testimony rose to a level of a violation of Mother's due process rights, and decline to reverse on this basis.

## III.  Attorney Fees

[16]  Finally, Mother argues that the trial court erred by ordering her to pay attorney fees in the amount of $700 to Father's attorney. We will reverse an attorney fee award in a post-dissolution context only if the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Ratliff v. Ratliff*, 804 N.E.2d 237, 249 (Ind. Ct. App. 2004). Where, as here, the trial court did not issue findings with respect to this issue, we will affirm the general judgment if it can be sustained upon any legal theory supported by the evidence in the record. *In re Marriage of Snemis*, 575 N.E.2d 650, 652 (Ind. Ct. App. 1991).

[17]  Indiana Code section 31-17-2.2-1(c) provides that, in the context of a relocation hearing, the trial court may "award reasonable attorney fees for a motion [to review and modify custody or parenting time] filed under this section in accordance with IC 31-15-10." Indiana Code section 31-15-10-1(a) states that the trial court "may order a party to pay a reasonable amount for the cost to the

other party of maintaining or defending any proceeding under this article and for attorney's fees and mediation services . . . ."

[18] Mother argues that because the trial court did not hold her in contempt for her decision to withhold parenting time from Father following the Play-Doh incident, there is no basis in the record for the attorney fee award. The trial court found that Mother should have called Father following the Play-Doh incident instead of involving "several governmental agencies" and that she withheld parenting time even after being notified that "[n]one of the agencies opted to investigate further or charge Father with anything." Appellant's App. p. 14.

[19] Father submitted documentation establishing that he incurred attorney fees in a total amount of $4495. Resp. Ex. 20-21. We find that the trial court did not err by ordering Mother to pay $700—a reasonable portion of the total fees he incurred. However, after engaging in the proper statutory analysis and entering a new order, the trial court would be within its authority to reevaluate the attorney fee award and reach a different result.

The judgment of the trial court is reversed and remanded with instructions to reevaluate its order by applying the correct statutory analysis and issue a new order to that effect.[5]

Robb, J., and Brown, J., concur.

---

[5] Depending on the result of its new analysis, the trial court may reach the same result or a different result on all pending issues, including custody, parenting time, and attorney fees.