# FOR PUBLICATION



**FILED**
Jun 26 2014, 10:04 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DONNA JAMESON**
Greenwood, Indiana

ATTORNEY FOR APPELLEE:

**ROBERT D. HAAS**
Blankenship & Haas
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| TRACI NELSON, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 41A01-1309-DR-424 |
| | ) | |
| TONY NELSON, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE JOHNSON SUPERIOR COURT
The Honorable Cynthia S. Emkes, Judge
Cause No. 41D02-0702-DR-55

**June 26, 2014**

**OPINION - FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Respondent, Traci Nelson (Mother), appeals the trial court's Order denying her motion for relocation and modifying custody of her minor child, T.N. (the Child), in favor of Appellee-Petitioner, Anthony Nelson (Father).

We affirm.

## ISSUE

Mother raises two issues on appeal, which we consolidate and restate as the following single issue: Whether the trial court erred by denying Mother's motion for relocation to South Carolina.

## FACTS AND PROCEDURAL HISTORY

On February 28, 2005, Mother and Father were married and established their home in Indiana. On July 19, 2005, the couple welcomed the Child. After only two years of marriage, the couple separated in January 2007, and Father subsequently filed a petition to dissolve marriage. On August 9, 2007, the trial court entered a Decree of Dissolution and adopted the Settlement Agreement reached by the parties. The Decree granted both parties joint legal custody of the Child, with Mother having primary physical custody. In addition, Father was awarded parenting time on alternate weekends, from Friday 6:00 PM through Sunday 6:00 PM, and one overnight during the week.

On November 12, 2010, Mother filed a notice of intent to move to South Carolina, citing she could not obtain employment in her field of work in Indiana. Prior to filing her

notice, Mother sold medical equipment for Home Health Depot, Inc., but her employment terminated on October 11, 2010. Mother's employment contract contained a non-compete clause; therefore, she could not work in a comparable field in Indiana for a period of at least one year.

On February 7, 2011, Father filed an objection to the proposed relocation. On April 19, 2011, Mother filed an amended notice of intent to move citing that she had received an offer from Tuomey Healthcare Systems (Tuomey), located in South Carolina, to work as a physical therapist, on the condition that she passed the National Physical Therapist Assistant Exam. Mother also stated that she intended to move to South Carolina on May 27, 2011. On May 10, 2011, Father filed a verified response and objection to Mother's amended notice of intent to move, a motion to modify custody and address parenting time, and a motion for a hearing. Prior to the trial court's approval, Mother relocated to South Carolina. Mother, however, failed the National Physical Therapist Assistant Exam, therefore, she lost the employment opportunity with Tuomey. In need of a job, Mother accepted a medical sales job with Ronco Specialized Systems Inc. in Columbus, South Carolina.

On July 29, 2011, the trial court held an emergency hearing to determine temporary custody of the Child pending a full evidentiary hearing. On August 9, 2011, the trial court issued an Order granting Father temporary custody of the Child and ordered Mother to bring the Child back to Indianapolis. Mother complied and returned the Child to Indiana. On March 5, 2013, and on June 25, 2013, the trial court held an evidentiary hearing on

Mother's motion to relocate, and Father's objection thereof and Father's motion to modify custody. On August 3, 2013, the trial court issued its Order concluding:

> (1) Mother has not met the burden of proof required of her [with] regard to her relocation request, and the [court] finds the same is not [in] good faith . . . ; (2) Father has met the burden of proof required of him in regard to his objection to the move [and] that the relocation is not in the best interest of the minor child; (3) Considering the statutory factors relevant to custody, the [court] finds both parties should share joint legal custody of the minor child and [that] Father should be granted sole physical custody with Mother having parenting time; and (4) Child support should be modified herein accordingly.

(Appellant's App. pp. 19-20).

Mother now appeals. Additional information will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Standard of Review*

Here, the parties did not request for specific findings of facts and conclusions pursuant to Indiana Trial Rule 52(A). However, the trial court *sua sponte* made findings on whether Mother's relocation request was made in good faith and for a legitimate purpose and whether the proposed relocation would be in the Child's best interest. As such, we employ a two tiered standard of review:

> [W]e must first determine whether the record supports the factual findings, and then whether the findings support the judgment. On appeal, we will not set aside the findings or judgment unless they are clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of witnesses. We therefore consider only the evidence favorable to the judgment and the reasonable inferences flowing therefrom, and we will neither reweigh the evidence nor assess witness credibility. A judgment is clearly erroneous when there is no evidence to support the findings, the findings do not support the judgment, or the trial court applies the wrong legal standard to properly found facts.

4

*T.L. v. J.L.*, 950 N.E.2d 779, 783 (Ind. Ct. App. 2011) (quoting *M.S. v.C.S.*, 938 N.E.2d 278, 281–82 (Ind. Ct. App. 2010)).

In addition, our supreme court has articulated an unequivocal policy of "granting latitude and deference to our trial judges in family law matters." *Swadner v. Swadner*, 897 N.E.2d 966, 971 (Ind. Ct. App. 2008) (quoting *In re Marriage of Richardson*, 622 N.E.2d 178, 178 (Ind. 1993)). "[A]ppellate courts 'are in a poor position to look at a cold transcript of the record, and conclude that the trial judge, who saw the witnesses, observed their demeanor, and scrutinized their testimony as it came from the witness stand, did not properly understand the significance of the evidence.'" *D.C. v. J.A.C.*, 977 N.E.2d 951, 956–57 (Ind. 2012) (quoting *Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind. 2002)). It is well established that there should be finality in matters concerning the custody of a child. *Baxendale v. Raich*, 878 N.E.2d 1252, 1258 (Ind. 2008). Accordingly, on review, "we 'will not substitute our own judgment if any evidence or legitimate inferences support the trial court's judgment.'" *T.L. v. J.L.*, 950 N.E.2d 779, 784 (Ind. Ct. App. 2011) (quoting *Baxendale*, 878 N.E.2d at 1257–58), *reh'g denied.*

## II. *Relocation*

Pursuant to Indiana Code section 31-17-2.2-1(a), "[a] relocating individual must file a notice of the intent to move with the clerk of the court that: (1) issued the custody order or parenting time order; or (2) . . . has jurisdiction over the legal proceedings concerning the custody of or parenting time with a child; and send a copy of the notice to any nonrelocating individual."

5

A nonrelocating parent may object to relocation in either of two ways: by filing a motion to modify the custody order or by filing, within sixty days of receipt of the notice, a motion to prevent relocation of the child. Upon request of either party, the trial court shall hold a full evidentiary hearing to grant or deny a motion to prevent relocation of the child. "The relocating individual has the burden of proof that the proposed relocation is made in good faith and for a legitimate reason." If the relocating parent meets that burden, "the burden shifts to the nonrelocating parent to show that the proposed relocation is not in the best interest of the child.

*T.L.*, 950 N.E.2d at 784. (internal references omitted).

A. *Good Faith and Legitimate Reason*

The Relocation Statute "requires that a legitimate reason be objectively shown [ ] and [,] by requiring that the relocation be in good faith, demands that the objective reason be more than a mere pretext." *T.L.*, 950 N.E.2d at 787. In general, our court has found that employment opportunities, financial considerations, and proximity to family are legitimate reasons to justify a relocation. *See id*. at 787-88.

Mother argues that her desire to move to South Carolina was in good faith. Mother's initial notice of her intent to relocate stated that she was unable to obtain employment in a similar field in Indiana; thus, she anticipated she would move to South Carolina if she established employment. The amended notice of intent to relocate stated that she had received a job offer from Tuomey to work as a physical therapist. Father however counters Mother's grounds for relocation by stating that because Mother was not barred from working in Indiana as a physical therapist, she should have sought employment here, as there were many job openings in that field.

The trial court issued a single finding that the relocation was not made in good faith. Finding 1 stated:

> 1. The [c]ourt finds Mother has not met her burden of proof in that she has not shown good faith or legitimate reason in relocating to South Carolina pursuant to Ind. Code 31-17-2.2-5(c). While the [c]ourt recognizes the importance of family ties and family relationships, the [c]ourt finds that there was not a good faith and legitimate reason for Mother to relocate to South Carolina other than her desire to do so without sufficient concern for the effect of the move on the child's wellbeing. However, even if the [c]ourt were to have found good faith, the [c]ourt finds that Father has met his burden of proof that Mother's relocation is not in the best interest of the Child.

(Appellant's App. p. 20). Based on the above, we conclude that the trial court's finding and the record itself, fails to support the trial court conclusion that the intended move was not in good faith. Rather, notwithstanding the fact that Mother moved to South Carolina prior the trial court's approval, we find that her reasons for relocation were legitimate and were in good faith.

The record reveals that Mother left home when she was eighteen years old and moved to Indianapolis to attend the University of Indianapolis. She graduated with a Bachelors and Associates of Science degree in 2000. After her graduation, Mother worked as a physical therapist assistant. Mother intended to work in that field, but never passed the licensure exam in Indiana. Fortunately, Mother obtained employment with RoyalMed in Greenfield, Indiana selling medical equipment. Mother took the position because she needed a job. Although it was Mother's hope to work as a physical therapist, she enjoyed her job in sales and as such, she settled her career in sales and marketing. On September 28, 2007, Mother started working for Home Health Depot, Inc. selling medical equipment.

7

When Mother lost her job in 2010, and due to a non-compete clause in her contract, Mother could not seek employment in a similar field.

As a result, in November 2010, Mother filed a notice of intent to move to South Carolina and cited various reasons justifying her move. Mother stated that she had no family in Indiana, could not obtain employment, and had a large extended family including—"sixteen [] siblings, [] approximately [one hundred and fifty] aunts, uncles, and cousins living in South Carolina." (Appellant's App. p. 31). The record also reveals that Mother's mother, Patricia (Patricia), was a recovering stroke patient. Patricia had suffered repeated strokes since 2005, with the last occurring in 2010. Mother's parents lived in Kokomo, Indiana, more than one hour away from Indianapolis, thus, it made it difficult for Mother to attend to Patricia's needs. The record shows that Mother would take time off from work on a regular basis, to respond to Patricia's medical emergencies. After Mother lost her job in 2010, Mother was unable to pay her debts, and she subsequently filed for bankruptcy. At that point, Mother was broke and could not sustain herself. Mother moved in with her boyfriend, Josh Merrell (Merrell). The record also reveals that Mother's father, could not secure a job in Indiana, but found one in South Carolina. Mother's parents were also relocating to South Carolina. Thus, Mother considered that the move on overall, would provide financial security, revive family ties, have her family under one roof, and ultimately have a team that could take care of Patricia.

In sum, in light of our finding that Mother's move to South Carolina was ultimately to seek employment, be closer to her extended family, explore a new career as a physical

8

therapist, and also to take care of her ailing mother, we conclude that the trial court erred in its conclusion that Mother's proposed relocation was not made in good faith and for a legitimate reason.

B. *Whether Relocation Was in the Best Interest of the Child*

Based on our conclusion that Mother's move to South Carolina was made in good faith and for a legitimate reason, we now have to determine if Father met his burden in proving that relocation was not in the best interest of the Child.

Here, Mother argues that the trial court failed to make a finding on all factors required to be considered under Indiana Code sections 31-17-2.2-1 and 31-17-2-8. Specifically, Mother argues that the trial court failed to make a finding on the following: (1) the hardship and expense involved for Father to exercise parenting; (2) the feasibility of preserving the relationship between Father and the Child through suitable parenting time arrangements; and (3) Mother's thwarting behavior. Mother is mistaken. As noted above, the trial court was not required to make a finding on all factors enumerated in I.C. § 31-17-2.2-1(b). So long as there is evidence on the record to support each of the factors, we will affirm the trial court's finding. *See Wolljung v. Sidell*, 891 N.E.2d 1109, 1113 (Ind. Ct. App. 2008) (relocation statutes do not require findings of fact, but, at a minimum, there must be evidence in the record on each of the factors listed in I.C. § 31-17-2.2-1(b)).

In making its determination, the trial court should have considered: (1) the distance involved in the proposed relocation; (2) the expense involved for the non-relocating parent to exercise visitation; (3) the feasibility of preserving the relationship of the nonrelocating

individual and the child through visitation; (4) whether there is an established pattern of conduct by the relocating individual to thwart the non-relocating parent's contact with the child; (5) the reasons provided by the relocating parent for the relocation; and (6) other factors affecting the best interest of the child. I.C. § 31-17-2.2-1. This statute also incorporates all of the best interests factors considered in making an initial custody determination. *Baxendale*, 878 N.E.2d at 1256. These factors include: (1) the age and sex of the child; (2) the wishes of the parents; (3) the wishes of the child; (4) the interaction and interrelationship of the child with the parents, siblings, and other people who may significantly affect the child's best interests; (5) the child's adjustment to home, school, and community; (6) the mental and physical health of all individuals involved; (7) evidence of domestic abuse; and (8) evidence of care by a *de facto* custodian. *See* I.C. § 31-17-2-8. Evidence of a parent's drug or alcohol use can also be relevant to that parent's health and the child's best interests. *See Russell v. Russell*, 682 N.E.2d 513, 515 (Ind. 1997).

Here, the trial court considered that (1) the one-way ten hour drive would diminish the Father-son bond; (2) the move to South Carolina would require the Child to leave his Father, step-mother, and paternal grandparents, all of whom he is very close to; (3) the Child would be required to leave established friends and to leave a routine that he was already accustomed to; (4) the Child desired to reside with Father; (5) the recommendation of the custody evaluators to modify primary custody in favor of Father; (6) Mother's relocation without the trial court's approval; and (7) Mother's indifference towards Father in a number of ways.

Our review of the record shows that Mother's proposed move was approximately 630 miles away and it was clear that the parent visitation would not occur frequently. In light of the distance factor, we find that the trial court thoughtfully considered the hardship and travel expenses involved. At trial, Father testified that he was unemployed for a period of time before starting his own business mid-2011, as a subcontractor. Father testified that his income varied and was contingent on job offers. Moreover, Mother testified that she was willing to forego child support so that Father "could afford to either drive or fly back and forth to South Carolina at least six times a year." (Transcript p. 148). Also, Mother testified that she would pay half the ticket cost to enable Father to fly down to South Carolina for the holidays. Based on the fact that Mother was willing to bear the transportation expenses, Mother acknowledged that Father was not in a position to afford the transportation expenses; thus Father would have incurred hardship in exercising parenting time.

As for the feasibility of preserving the relationship between Father and Child and Mother's thwarting behavior, we find that the following evidence supports the trial court's denial of Mother's relocation. First, we note that Mother relocated to South Carolina prior to attaining the trial court's approval. In addition, the trial court found that the "ten hour drive one-way [would] significantly diminish the Father-son bond." (Appellant's App. p. 3). Furthermore, the Child Custody and Visitation Evaluation, dated November 5, 2011, stated that Mother "presented herself with a sense of entitlement" and that felt that she "should be able to do what she wants to do without reproach." (Appellant's App. p. 48).

The report further stated that during the evaluation, Mother "related several times that she couldn't believe [Father] was fighting her moving to South Carolina" as he "never did anything with [the] [C]hild and [that] she was the main parent in [the Child's] life." (Appellant's App. p. 48). In conclusion, the report explained that her statements were "denigrating" and it raised concern whether Father would be able to sustain a relationship with the Child if Mother received primary custody. *Id*.

Based on the foregoing, we find that feasibility of preserving the relationship between Father and the Child was highly doubtful. Mother, however, draws our attention to evidence indicating that she had no intention of thwarting Father's contact with the Child. Mother states that although she relocated to South Carolina without the trial court's approval, she and Father had reached an agreement to have the Child remain with Father beginning May 31, 2011, and to be reunited with Mother around July 12, 2011. As such, Mother argues that this evidence in itself, presents enough proof to suggest that she had no intention to thwart Father's relationship with the Child. Mother's request for this court to believe her argument is nothing more than an invitation to reweigh the evidence, which we will not do. *See T.L.*, 950 N.E.2d at 789. In summary, the trial court's conclusion that the Relocation Statute factors disfavored relocation and merit a change in custody to Father, was clearly not erroneous.

## CONCLUSION

We conclude that Mother's proposed relocation of the Child to South Carolina was in good faith and for legitimate reasons. However, the evidence supports the trial court's

conclusion that relocation was not in the Child's best interest. For that reason, we affirm the trial court's decision denying Mother's request to relocate with the Child to South Carolina.

Affirmed.

ROBB, J. and BRADFORD, J. concur