## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 14 2017, 8:55 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Alan D. Wilson
Kokomo, Indiana

ATTORNEY FOR APPELLEE

David W. Stone IV
STONE Law Office & Legal Research
Anderson, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In re the Paternity of G.Y., Minor Child | December 14, 2017 |
| | Court of Appeals Case No. 27A02-1705-JP-1110 |
| C.R., *Appellant*, | Appeal from the Grant Circuit Court |
| v. | The Honorable Mark E. Spitzer, Judge |
| A.Y., *Appellee*. | Trial Court Cause No. 27C01-1304-JP-40 |

**Brown, Judge.**

[1] C.R. ("Mother") appeals from the order of the trial court awarding custody of G.Y. to A.Y. ("Father"). Mother raises two issues which we consolidate and restate as whether the court erred in not allowing the relocation of G.Y. We remand.

*Facts and Procedural History*

[2] On April 26, 2013, the trial court entered an agreed order on paternity finding that Father was the father of G.Y., who was born in 2010, and that Mother and Father stipulated to a joint physical and legal custody arrangement of G.Y. On February 27, 2014, a Mediation Agreement was filed which stated in part that the parties shall share joint legal custody, and the court approved the agreement.

[3] On June 1, 2015, Father filed a petition to modify parenting time. On November 12, 2015, the court appointed a guardian ad litem. On August 10, 2016, guardian ad litem William Myers ("GAL Myers") filed a report indicating that both parents had a solid and proper relationship with G.Y. and that he had no concerns other than the parents' inability to communicate with one another regarding G.Y.'s needs. On September 7, 2016, Father filed a Petition for Joint Physical Custody or In the Alternative Petition for Additional Parenting Time.

[4] On December 16, 2016, Father filed a petition to modify custody which requested full legal and physical custody of G.Y. That same day, the court scheduled a hearing on the petition to modify custody for April 19, 2017.

On March 20, 2017, Mother filed a notice of intent to relocate to Winston-Salem, North Carolina, which stated that Mother's husband had a job as a regional manager for Jimmy John's, his employment relocated him there, and the job provided the family with better opportunities and more income.

On April 17, 2017, GAL Myers filed a report in which he stated that he was again contacted by the parties through their respective attorneys in October 2016 regarding "yet another complaint of alleged abuse by" Father on G.Y., that GAL Myers attempted to reach out to Mother, through her attorney, regarding the complaint but he had yet to hear from her. Appellant's Appendix II at 45. GAL Myers also reported that he had no concerns regarding Father's parenting abilities and that he did not believe that allowing G.Y. to move to North Carolina was in G.Y.'s best interests.

On April 19, 2017, the court held the scheduled hearing. Without objection from Mother's counsel, GAL Myers testified and his April 17, 2017 report was admitted into evidence. During cross-examination by Mother's counsel, GAL Myers testified that the court did not order his supplemental report. The court heard testimony from Desiree Hartwig, a family case manager, Marion Police Officer Joshua Swanson, Father's pastor, Father's coworker, Father's father-in-law, Father's wife, Father's mother, Father, Mother's mother, Mother, and Mother's husband.

On April 27, 2017, the court entered its Order on Petition to Modify Custody. The order states:

On April 19, 2017, [Father] and [Mother] appeared in person and by counsel for hearing on the various petitions of the parties, and ultimately and most significantly, Mother's Notice of Intent to Relocate.[1] The Court now enters the following Order.

Mother and Father currently exercise joint legal custody of their six-year-old son, [G.Y.]. The evidence indicates that both Mother and Father are good parents to [G.Y.], but have been unable to communicate well despite the joint legal custody arrangement. At this point, Mother and Father have declined to speak with each other personally, but will only communicate via e-mail. This is due in large part to Mother's numerous complaints to legal authorities alleging various forms of abuse, which have in each instance been found to be unsubstantiated.

The parties have been engaged in an extended battle over parenting time, support, and custody since mid-2015. The matter was set for hearing on several occasions, but was continued several times to involve a guardian ad litem and accommodate discovery as other issues arose. The case was finally set for a one day custody trial on April 19. On March 20, 30 days before the trial, Mother filed her Notice of Intent to Relocate with the Court. In that Notice, she indicated that she would be moving to Winston-Salem, North Carolina. The Notice was the first information about any move that Mother gave to Father (although he had learned that a move may be in the offing shortly before the Notice through comments made by [G.Y.]), and prior to the hearing, despite the joint custody relationship, Mother had not shared information with Father about the specifics of the

---

[1] The court's order contained a footnote which states:

> There were several motions or petitions filed on both sides relating to custody, support, and parenting time. Those petitions were in essence rendered moot by Mother's relocation notice, which of necessity will require a re-examination of the current custody, parenting time, and support arrangement. Thus, this Order is directed to the Notice of Intent to Relocate and its implications.

Appellant's Appendix II at 16.

move such as the name and location of a new school, potential health care providers, potential child care providers, etc.

The reason that Mother indicated for her move was to follow her husband . . . who had taken a job with Jimmy John's as a store manager in Winston-Salem. The standard for evaluating the move of a parent is set forth in I.C. 31-17-2.2. When presented with a Notice of Intent to Relocate, a court's first task is to determine if the proposed move is undertaken in good faith. *Nelson v. Nelson*, 10 N.E.3d 1283, 1286-1287 (Ind. Ct. App. 2014). Legitimate justifications for a relocation include employment opportunities, financial considerations, and proximity to family. *Id.* at 1286. In this case, however, there are facts which might support the contention that Mother and her husband's move is not in good faith. The timing of the move, shortly before the custody trial, is concerning. In addition, the fact that Mother didn't discuss with her joint custodian something as momentous as a 500-mile move taking their child nine and one-half hours away is irresponsible at best and intentionally deceptive at worst. Finally, the proffered reason – a new job – raises its own questions, in that [Mother's husband] previously worked as a manager for Jimmy John's in Marion, and had other opportunities to work for a Jimmy John's in Indianapolis. Certainly, there are other Jimmy John's restaurants which are closer to Grant County, Indiana. Nonetheless, both Mother and [Mother's husband] testified that they moved for the job, and certainly [Mother's husband] is working at the new job. Thus, the Court will accept at face value Mother's testimony that the move is being made in good faith, particularly since the second prong of the analysis is outcome-determinative.

The second prong of the analysis is whether the move would be within the best interests of the child, a burden which is borne by Mother as the relocating parent. *Nelson*, *supra*, 10 N.E.3d at 1288. Our Supreme Court has noted that there is no blanket rule that a relocation that deprives a parent of time with a child is always against the best interest of the child. *D.C. v. J.A.C.*, 977

N.E.2d 951 (Ind. 2012). The Court in *Nelson* noted that the court should consider the factors in I.C. § 31-17-2.2-1 and the best interests factors considered in making an initial custody determination in I.C. § 31-17-2-8. *Nelson*, *supra*, 10 N.E.3d at 1288. Evidence was presented on many of these factors at trial. There is certainly a significant distance and travel time involved in parenting time and custody with the move – the joint custody relationship will be unworkable, even if it could be salvaged through significantly improved communication. [G.Y.] has close ties with many extended family members in Grant County, and those ties are extraordinary as he spends time each week with extended family on both parents' sides. While Mother has relatives in North Carolina or the surrounding states, most are not currently close to [G.Y.] and are a significant drive away from Winston-Salem. [G.Y.] is also a regular participant at his church and church youth groups, and attends school in Grant County. Certainly, there was evidence that the move would result in hardship on the non-moving parent (Father). Further, the guardian ad litem testified that in his opinion, a change of custody would be appropriate under the circumstances.

There are countervailing considerations as well. [G.Y.'s] half-brother will be moving with his parents, and there is evidence that he and [G.Y.] are closely bonded. If, as Mother asserts, [her husband's] job opportunity leads to opportunities for advancement, it would provide financial stability for their household which has experienced financial instability and personal bankruptcy in the past. Such financial stability would certainly be a benefit to [G.Y.'s] future.

Considering the factors set forth in the relocation statute, the Court finds that on balance, the best interests of the child dictate sole legal custody to be with Father and Mother to receive parenting time according to the Parenting Time Guidelines, when distance is a factor, unless the parties agree to a different arrangement. The Court comes to this conclusion, mindful that "[e]ven two parents who are exceptional on an individual basis

when it comes to raising their children should not be granted, or allowed to maintain, joint legal custody over the children if it has been demonstrated . . . that those parents cannot work and communicate together to raise the children.["] *Carmichael v. Siegel*, 754 N.E.2d 619, 636 (Ind. Ct. App. 2001). Unfortunately, "a joint custody order may simply provide a framework for the parents to continue the conflict which brought them to divorce in the first place. The conflict would just be focused solely on the children." Barteau and Hopkins, *Joint Custody in Indiana*, 27 *Res Gestae* 320, 324 (1984). Sadly, that has occurred in this case. However, the parties are encouraged to attempt to repair that relationship, and to discuss and, where appropriate, modify, the holiday schedules if an alternate arrangement may be more workable with the distance factors. In addition, Father shall facilitate reasonable telecommunication between Mother and [G.Y.], including but not limited to texting/instant messaging/e-mail, FaceTime, or social media communication. On those occasions where Mother is in Grant County visiting her family, after reasonable notice, Father shall make reasonable accommodations for Mother to spend additional parenting time with [G.Y.]. Father also testified that he was aware of [G.Y.'s] bond with Mother's family, and the Court expects that Father will facilitate grandparental parenting time in the future.

The change in custody triggers a recalculation of support. Mother shall pay support in the amount of $39 per week, together with the annual support fee. An Income Withholding Order is authorized if Mother should gain employment. The parties shall alternate the tax exemption with Mother entitled to the tax exemption beginning in 2017. Pursuant to the Guidelines, Mother shall pay the first $503.32 of uninsured medical expenses and the balance shall be paid 75% by Father and 25% by Mother. A Child Support Obligation Worksheet is attached to this Order. Father shall make arrangements to add [G.Y.] to his insurance as soon as the opportunity is available.

Both parties requested fees. Father is gainfully employed, and Mother is able to be gainfully employed but has chosen not to work. Both parties shall pay their own fees.

*Id.* at 16-21 (footnotes omitted).

## *Discussion*

[9] The issue is whether the trial court erred in not allowing the relocation of G.Y. Mother asserts that the trial court erred by failing to shift the burden to Father after it accepted Mother's testimony that the move was being made in good faith.[2] Father contends that the trial court did not state that Mother failed to meet her burden of proof that the move would be in G.Y.'s best interest and that it simply determined that the award of custody to Father was in G.Y.'s best interest.

[10] We observe that the court titled its order "ORDER ON PETITION TO MODIFY CUSTODY," yet noted that it was focusing on Mother's notice of intent to relocate. *Id.* at 16. Specifically, the court noted:

> There were several motions or petitions filed on both sides relating to custody, support, and parenting time. Those petitions were in essence rendered moot by Mother's relocation notice, which of necessity will require a re-examination of the current custody, parenting time, and support arrangement. Thus, this

[2] Mother also contends that the trial court erred in admitting GAL Myers's supplemental report. However, Mother did not object to the admission of the report at the hearing. Accordingly, Mother has waived this issue. *See Bogner v. Bogner*, 29 N.E.3d 733, 740 (Ind. 2015) (noting the "general principle that objections not contemporaneously raised are waived").

Order is directed to the Notice of Intent to Relocate and its implications.

*Id.*

[11]     Generally, where a trial court makes specific findings of fact and conclusions of law in an order modifying custody and preventing relocation, we "shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." *D.C. v. J.A.C.*, 977 N.E.2d 951, 953 (Ind. 2012) (quoting *Best v. Best*, 941 N.E.2d 499, 502 (Ind. 2011) (quoting Ind. Trial Rule 52(A))). Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference. *Id.* An appellate court neither reweighs the evidence nor reassesses witness credibility, and it views evidence most favorably to the judgment. *Id.* "We review the trial court's legal conclusions de novo." *Perkinson v. Perkinson*, 989 N.E.2d 758, 761 (Ind. 2013).

[12]     Ind. Code §§ 31-17-2.2 govern the relocation of a custodial parent. Ind. Code § 31-17-2.2-5 governs the burden of proof and provides:

> (a) Not later than sixty (60) days after receipt of the notice from the relocating individual under IC 31-14-13-10 or this chapter, a nonrelocating parent may file a motion seeking a temporary or permanent order to prevent the relocation of a child.
>
> (b) On the request of either party, the court shall hold a full evidentiary hearing to grant or deny a relocation motion under subsection (a).

(c) The relocating individual has the burden of proof that the proposed relocation is made in good faith and for a legitimate reason.

(d) *If the relocating individual meets the burden of proof under subsection (c), the burden shifts to the nonrelocating parent to show that the proposed relocation is not in the best interest of the child.*

(e) If the nonrelocating parent fails to file a motion under subsection (a), the relocating individual who has custody of the child may relocate to the new residence.

(Emphasis added).

[13] In discussing the reason for Mother's move, while the trial court expressed some reservation regarding whether Mother's proposed relocation was made in good faith, it also observed that both Mother and Mother's husband testified that they moved for the job, found that Mother's husband was working at the new job, and accepted "at face value Mother's testimony that the move is being made in good faith." Appellant's Appendix Volume II at 18. The court stated that the "second prong of the analysis is whether the move would be within the best interests of the child, a burden which is borne by Mother as the relocating parent." *Id.* (citing *Nelson v. Nelson*, 10 N.E.3d 1283, 1288 (Ind. Ct. App. 2014)). However, the court in *Nelson* did not place the burden on the relocating parent to demonstrate whether the move would be in the best interests of the child. Rather, the court held that the relocating individual has the burden of proof that the proposed relocation was made in good faith and for a legitimate reason and that, if the relocating parent meets that burden, the burden shifts to the nonrelocating parent to show that the proposed relocation is not in the best

interest of the child. *Nelson*, 10 N.E.3d at 1286. Specifically, the court stated: "Based on our conclusion that Mother's move to South Carolina was made in good faith and for a legitimate reason, we now have to determine if Father met his burden in proving that relocation was not in the best interest of the Child." *Id.* at 1288. In light of Ind. Code § 31-17-2.2-5 and *Nelson*, we conclude that the trial court improperly placed the burden on Mother to show that the proposed relocation was in the best interest of G.Y.

[14] While the trial court found that "on balance, the best interests of the child dictate sole legal custody to be with Father and Mother to receive parenting time," the court also recognized some "countervailing considerations" including that G.Y.'s half-brother would be moving with his parents, there was evidence that he and G.Y. were closely bonded, and that if the job opportunity led to opportunities for advancement, it would provide financial stability for their household. Appellant's Appendix Volume II at 19. We note that "[a]ppellate courts 'are in a poor position to look at a cold transcript of the record, and conclude that the trial judge, who saw the witnesses, observed their demeanor, and scrutinized their testimony as it came from the witness stand, did not properly understand the significance of the evidence.'" *Steele-Giri v. Steele*, 51 N.E.3d 119, 124 (Ind. 2016) (quoting *Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind. 2002) (quoting *Brickley v. Brickley*, 247 Ind. 201, 204, 210 N.E.2d 850, 852 (1965))). Under the circumstances, we conclude that remand is necessary for the trial court to analyze the issue utilizing the correct burden of proof based

on the existing record. We express no opinion as to the outcome utilizing the correct burden of proof.

## Conclusion

[15] For the foregoing reasons, we remand for the trial court to consider the correct burden of proof based on the existing record and to issue an amended order.

Najam, J., and Kirsch, J., concur.