## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
May 15 2018, 5:59 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jon P. McCarty
Covington, Indiana

ATTORNEY FOR APPELLEE

Holly Crain Clemence
Wallace Law Firm
Covington, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

David Galyen,
*Appellant*,

v.

Amber Galyen,
*Appellee*.

May 15, 2018

Court of Appeals Case No.
83A04-1711-DR-2664

Appeal from the Vermillion
Circuit Court

The Honorable Harry A. Siamas,
Special Judge

Trial Court Cause No.
83C01-1507-DR-49

**Brown, Judge.**

[1] David Galyen ("Father") appeals the trial court's October 20, 2017 order on the objection to his intent to relocate and the request for custody filed by Amber Galyen ("Mother"). We affirm.

*Facts and Procedural History*

[2] Father and Mother have two children, born in 2008 and 2010. The trial court entered a decree of dissolution, file-stamped on January 10, 2017, dissolving the parties' marriage and incorporating their settlement agreement. The agreement provided the parties shall have joint legal custody of the children and that Mother's parenting time would be at a minimum one mid-week visit for four hours, weekend visitation from Friday after school until Monday at the beginning of school on two weekends per month, in even-numbered months and from Friday after school until Sunday evening on three weekends per month in odd-numbered months, and holiday overnight visits per the Indiana Parenting Time Guidelines. The agreement also provided Father would have the first two and last two weeks of summer visitation and Mother would have the balance of the summer with Father having visitation every other weekend from Friday until Monday morning.

[3] On July 12, 2017, Father filed a notice of intent to relocate.[1] On August 9, 2017, Mother filed an objection to Father's notice of intent to relocate and a

---

[1] The record does not contain a copy of Father's notice.

petition to modify custody.[2]  On August 14, 2017, the court scheduled a hearing for September 28, 2017.[3]  Mother filed an affidavit for rule to show cause.[4]  On September 28, 2017, the court held a hearing at which it heard testimony from Mother, Mother's mother, and Father.  The court heard testimony that Father had resided with the children in Ridge Farm, Illinois, and had worked in Danville, Illinois, that Mother lived nearby in Georgetown, Illinois, and that in August of 2017[5] Father relocated with the children to New Carlisle, Indiana, and began working for a new employer in New Carlisle with a higher salary.

[4]  On October 20, 2017, the court entered an order which provided:

> 1.  Initially, the burden is on the relocating parent to show that the relocation is made in good faith and for a legitimate reason.  [Father] relocated to New Carlisle Indiana to obtain a job at a much higher salary.  He learned that he was hired in early July and he gave notice of his intent to relocate to [Mother] and the Court on July 12, 2017.  The Court finds that [Father's] relocation was made in good faith and for a legitimate reason.  In addition, the Court finds that [Father] filed his notice of intent to relocate within the time periods provided in I.C. 31-17-2.2-3(b).
>
> 2.  Next, since [Father] met his initial burden, the burden shifts to [Mother] to show that the proposed relocation is not in

---

[2] The record does not contain a copy of Mother's objection or petition.

[3] The chronological case summary ("CCS"), with respect to this entry, indicates: "MIN Date: 08/14/2017" and "Input: 08/21/2017."  Appellant's Appendix at 9.

[4] The record does not contain a copy of the affidavit.  The CCS indicates the affidavit was filed on October 11, 2017.  However, the court observed at the September 28, 2017 hearing that the affidavit had been filed and would be considered at the hearing.

[5] Father testified he had lived in New Carlisle since August 15th and that he signed his lease on July 31st.

the children's best interests. The Court must consider the factors found in I.C. 31-l7-2.2-1(b) and any other factors that affect the best interests of the children. The Court finds that the distance of the relocation is about 180 miles and that the drive time is in excess of three hours. The distance makes it impossible for [Mother] to exercise the parenting time that she had been exercising. The distance adversely affects [Mother's] ability to preserve her relationship with her daughters that she was able to maintain when the children lived in the same area as her. While [Father's] reasons to relocate are entirely reasonable the relocation is a hardship on the children in that the relocation removes the children from close proximity to their mother, their paternal and maternal grandparents and their other extended family and friends. These are important relationships for the children. While [Father] is willing to do all the driving and transport the children back and forth between Georgetown Illinois and New Carlisle Indiana every other weekend and holidays, this is a long drive for the children, and it still means that [Mother] is deprived of her weekly Thursday visits, her third weekend every other month and the ability to participate in the children's school activities, extra-curricular activities, and doctor and dental appointments. While [Mother] has joint legal custody of the children [Father's] relocation effectively ends her ability to act as a joint legal custodian. [Father] presented evidence that the school system in New Carlisle is much better than the school system in Georgetown, and the Court has considered that evidence. However, on balance the Court finds that [Mother] has carried her burden of proof. The Court finds that relocation may be in [Father's] best interest but it is not in the children's best interests. The Court finds that therefore [Mother's] objection to [Father's] relocation of the children is sustained.

3. The Court finds that it is not best for the children to be moved during the school semester. The Court finds that the children should complete the current school term in New Carlisle and then they should be enrolled in an appropriate school in Georgetown or North Vermillion school district at the start of the

winter or spring school term. The Court finds that if [Father] chooses to relocate back to the Georgetown area then the order of January 10, 2017 shall remain in effect. If [Father] chooses to remain in New Carlisle then the children shall reside primarily with [Mother] and [Father] shall exercise parenting time pursuant to the Indiana Parenting Time Guidelines when distance is a factor.

4.    The Court finds that [Father] did not receive notice of the Court's order requiring him to enroll the children in Pinecrest Elementary School in Georgetown, Illinois until after he relocated to New Carlisle and he had enrolled the children in alternate schooling. The Court finds that the evidence is not sufficient for the Court to find that [Father] is in contempt of court and therefore the Court denies the affidavit for rule to show cause and [Mother's] request for attorney fees.

Appellant's Appendix at 11-12.

## Discussion

Father claims the trial court's October 20, 2017 order is clearly erroneous and should be reversed. We review custody modifications for an abuse of discretion. *In re Paternity of J.J.*, 911 N.E.2d 725, 727 (Ind. Ct. App. 2009). We will not reweigh the evidence or judge the credibility of the witnesses. *Id.* We consider only the evidence most favorable to the judgment and any reasonable inferences from that evidence. *Id.* at 727-728. Where a trial court enters findings of fact and conclusions of law, first we determine whether the evidence supports the findings, and second we determine whether the findings support the judgment. *Lechien v. Wren*, 950 N.E.2d 838, 841 (Ind. Ct. App. 2011). We will set aside the trial court's specific findings only if they are clearly erroneous,

that is, when there are no facts or inferences drawn therefrom to support them. *Id.* A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. *Id.* The findings control only as to the issues they cover, and a general judgment standard applies to issues upon which the trial court made no findings. *Id.*

[6] The Indiana Supreme Court has expressed a "preference for granting latitude and deference to our trial judges in family law matters." *In re Marriage of Richardson*, 622 N.E.2d 178, 178 (Ind. 1993). Appellate deference to the determinations of our trial court judges, especially in domestic relations matters, is warranted because of their unique, direct interactions with the parties face-to-face, often over an extended period of time. *Best v. Best*, 941 N.E.2d 499, 502 (Ind. 2011). Thus enabled to assess credibility and character through both factual testimony and intuitive discernment, our trial judges are in a superior position to ascertain information and apply common sense, particularly in the determination of the best interests of the involved children. *Id.* We will not substitute our own judgment if any evidence or legitimate inferences support the trial court's judgment. *Baxendale v. Raich*, 878 N.E.2d 1252, 1257-1258 (Ind. 2008).

[7] Custody modifications are generally governed by Ind. Code § 31-17-2-21, which provides that a custody modification is permitted if the modification is in the best interests of the child and there has been a substantial change in one or more of the factors identified in Ind. Code § 31-17-2-8. *In re Paternity of J.J.*, 911 N.E.2d at 728.

[8]     Ind. Code §§ 31-17-2.2 governs the relocation of a custodial parent. *Id.* When a non-relocating parent seeks custody in response to a notice of intent to relocate with a child, the court shall take into account the factors found at Ind. Code § 31-17-2.2-1(b). *Id.* at 729. In contrast to the modification statute, a relocation-based modification need not involve a substantial change to one of the original best interests factors. *Jarrell v. Jarrell*, 5 N.E.3d 1186, 1192 (Ind. Ct. App. 2014), *trans. denied*; *In re Marriage of Harpenau*, 17 N.E.3d 342, 346 (Ind. Ct. App. 2014). Ind. Code § 31-17-2.2-1(b) provides:

> Upon motion of a party, the court shall set the matter for a hearing to review and modify, if appropriate, a custody order, parenting time order, . . . or child support order. The court shall take into account the following in determining whether to modify a custody order, parenting time order, . . . or child support order:
>
> (1)     The distance involved in the proposed change of residence.
>
> (2)     The hardship and expense involved for the nonrelocating individual to exercise parenting time or grandparent visitation.
>
> (3)     The feasibility of preserving the relationship between the nonrelocating individual and the child through suitable parenting time and grandparent visitation arrangements, including consideration of the financial circumstances of the parties.
>
> (4)     Whether there is an established pattern of conduct by the relocating individual, including actions by the relocating individual to either promote or thwart a nonrelocating individual's contact with the child.
>
> (5)     The reasons provided by the:

> (A)  relocating individual for seeking relocation; and
>
> (B)  nonrelocating parent for opposing the relocation of the child.
>
> (6)  Other factors affecting the best interest of the child.

[9] "The 'other factors affecting the best interest of the child' include, by implication, the factors set forth for custody determinations and modifications under Indiana Code section 31-17-2-8."[6] *H.H. v. A.A.*, 3 N.E.3d 30, 34 (Ind. Ct. App. 2014) (citations omitted). "The court may consider a proposed relocation of a child as a factor in determining whether to modify a custody, parenting time order, . . . or child support order." Ind. Code § 31-17-2.2-2(b).

[10] The trial court is required to consider all the factors in Ind. Code § 31-17-2.2-1(b). *In re Marriage of Harpenau*, 17 N.E.3d at 347. The relocation statutes do not require findings, but there must be evidence in the record on the factors. *Wolljung v. Sidell*, 891 N.E.2d 1109, 1113 (Ind. Ct. App. 2008); *see Harpenau*, 17 N.E.3d at 347 ("Although the trial court did not make specific findings about each factor, our review of the record shows that there was sufficient evidence of each relevant factor to support the trial court's decision.") (footnote omitted);

---

[6] The factors listed in Ind. Code § 31-17-2-8 include: (1) the age and sex of the child; (2) the wishes of the child's parent or parents; (3) the wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen years of age; (4) the interaction and interrelationship of the child with the child's parent or parents, the child's sibling, and any other person who may significantly affect the child's best interests; (5) the child's adjustment to the child's home, school, and community; (6) the mental and physical health of all individuals involved; (7) evidence of a pattern of domestic or family violence by either parent; (8) evidence that the child has been cared for by a de facto custodian; and (9) a designation in a power of attorney of the child's parent or a person found to be a de facto custodian of the child.

*Nelson v. Nelson*, 10 N.E.3d 1283, 1288 (Ind. Ct. App. 2014) ("[T]he trial court was not required to make a finding on all factors enumerated in I.C. § 31-17-2.2-1(b). So long as there is evidence on the record to support each of the factors, we will affirm the trial court's finding.").

[11] The relocating individual has the burden of proof that the proposed relocation is made in good faith and for a legitimate reason, and if the relocating individual meets the burden of proof, the burden shifts to the nonrelocating parent to show that the proposed relocation is not in the best interest of the child. Ind. Code § 31-17-2.2-5. When a relocation is made in good faith, the analysis ultimately turns on the best interests of the child. *Baxendale*, 878 N.E.2d at 1256 n.5.

[12] Father argues that the trial court failed to consider or disregarded several of the factors in Ind. Code § 31-17-2.2-1(b) and notes that, while the relocation statutes do not require findings, at a minimum there must be evidence in the record on each of the factors. He further argues that the court's findings are not supported by the evidence, no evidence supports the finding that Mother would be deprived of her third weekend every other month, she would merely lose the ability to keep the children overnight on Sunday every other weekend, there is no evidence the children participate in extra-curricular activities, and the record is devoid of any mention of the children's medical or dental providers and where they are located.

[13] Mother maintains that the court properly found the distance of the relocation would make it impossible for her to exercise all of her parenting time and

adversely affect her ability to preserve her relationship with the children and that the court recognized that the children have strong ties and relationships with family and friends in the area of Georgetown and the importance of those relationships. She also argues the court properly notes that Father's relocation effectively ends her ability to act as a joint legal custodian.

[14] At the September 28, 2017 hearing, Mother testified that the children were six and nine years old, that she lived in Georgetown, Illinois, that the children had lived in New Carlisle for about a month, and that she was requesting custody. She testified that, if the court awarded her custody, she would move in with her mother and stepfather who lived about two minutes from her and then, within thirty or maybe sixty days, she would obtain a larger house so the children would have their own room. She testified the children had been moved away from their entire support system, there is no one in New Carlisle to watch them and they do not have family and friends there, her parents and Father's grandparents are in Georgetown, and Father's parents live in Ridge Farm which is ten minutes away. She indicated that, before they relocated, Father and the children lived with Father's parents. She testified the children had attended school in North Vermillion when the parties lived in their marital residence and attended school in Georgetown after Father and the children moved to Georgetown to live with his parents. She testified that her mother would provide child care while she was at work. When asked if she was receiving her visitation, Mother stated "No I'm not. I'm getting every other weekend. I don't get my four hours during the week. I don't get my extra

weekend anymore. I do not get my extra Sunday night." Transcript Volume 2 at 10. She testified that it took three hours to travel to New Carlisle. Mother presented evidence that she earned $12.10 per hour and testified that her hours of employment were from 9:00 a.m. to 5:30 or 6:30 p.m. on Mondays and Tuesdays, 12:30 or 1:30 p.m. to 8:00 p.m. on Wednesdays and Fridays, 10:00 a.m. to 4:30 p.m. on two Saturdays per month, and 10:00 a.m. to 6:00 p.m. on one Sunday per month. Mother also asked for attorney fees due to contempt.

[15] On cross-examination, Mother indicated that Father has provided transportation for the children to visit her, that the school in New Carlisle is a better school academically than the school in Georgetown, and that she lives in a home that, from what she was told, used to be a garage that was converted into a home. She indicated that, before Father relocated to New Carlisle, Father's parents would watch the children between the time Father left for work and the time they left for school, that the children were released from school at 2:15 p.m., that Father left work at 4:00 p.m., and that as far as she knew their grandmother watched them until Father arrived home. On redirect examination, Mother indicated that her mother was going to watch the children while she was at work and that she would be in the same residence as her mother. Mother's mother testified that Mother and the children are welcome to stay at her house, that she is retired and available to drive the children to school and pick them up, and that she is concerned that the children are away from all of their support system.

[16]     Father testified he earns $17,000 more than he earned at his employment in Danville, Illinois, and he works one hour less per day and receives bonuses. He stated that the children board the bus at 6:40 a.m., they are released from school at 1:50 p.m., they take a bus to an after school program, and he picks them up after work. He testified that he would continue to provide all transportation for Mother's parenting time, and that if the court says he cannot relocate the children, he would move back to Georgetown.

[17]     The record reveals that the evidence, as set forth above and in the record, supports the trial court's findings that the distance of Father's relocation was approximately 180 miles, that the travel time between Mother and Father's residences is in excess of three hours, and that the distance adversely impacts Mother's relationship with the children and removes the children from close proximity to their paternal and maternal grandparents. The court heard the testimony of Father and Mother, as well as that of Mother's mother, related to the children's schooling and the parties' care for the children, their living arrangements, and their resources and work schedules. The court was able to consider Father's testimony that he was willing to provide all of the transportation for Mother's visitation and was willing to give Mother additional visitation to make up for any missed visitation. While the parties did not present certain evidence of the children's medical appointments or of all of the school and extra-curricular activities in which they were or would be involved, the distance of Father's relocation supports the trial court's finding that the relocation effectively ended Mother's ability to act as a joint legal custodian.

The court was able to consider the testimony presented by the parties and to take into account the distance involved in the relocation, the hardship involved for Mother as the nonrelocating parent to exercise parenting time, the feasibility of preserving Mother's relationship with the children through suitable parenting time and the financial circumstances of the parties, the conduct of the parties, and the reasons provided by Father for his relocation and by Mother for opposing the relocation. The court was also able to consider the evidence presented regarding the length of time the children lived with Father as well as the age and gender of the children, the parties' wishes, the interrelationship of the children with their parents and other family members, and the children's adjustment to their home and school.

[18] Based upon the record, and keeping in mind our deference to trial judges in family law matters, we cannot say that there are no facts or inferences drawn therefrom to support the trial court's findings or that the court's decision is clearly erroneous.

## Conclusion

[19] For the foregoing reasons, we affirm the trial court's October 20, 2017 order.

[20] Affirmed.

Bailey, J., and Crone, J., concur.