## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 18 2018, 8:53 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Michael H. Michmerhuizen
Barrett McNagny LLP
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In re the Marriage of | December 18, 2018 |
| J.G.H., | Court of Appeals Case No. 18A-DC-1444 |
| *Appellant-Respondent,* | |
| v. | Appeal from the Adams Circuit Court |
| | The Honorable Chad E. Kukelhan, Judge |
| K.R.K., | |
| *Appellee-Petitioner* | Trial Court Cause No. 01C01-1711-DC-48 |

**Crone, Judge.**

## Case Summary

As part of an amended decree dissolving the marriage of J.G.H. ("Father") and K.R.K. ("Mother"), the trial court found that Father was entitled to no parenting time with the couple's two-year-old son ("Child"). Father appeals, claiming that the trial court erred in failing to specify a factual basis for denying his parenting time rights and that the evidence does not support such a denial. He also challenges the court's award of certain attorney's fees to Mother. Finding no reversible error in the specificity of the findings on parenting time or in the trial court's award of attorney's fees, we affirm on those issues. However, concluding that the trial court's decision to deny Father parenting time is contrary to law, we reverse and remand.

## Facts and Procedural History

Father and Mother were married in January 2016. They separated in June 2016, when Child was an infant. Father saw Child three or four times thereafter. In November 2017, Wife filed a petition for marital dissolution. She asked that Father not be granted any parenting time, citing an incident during her pregnancy with Child in which Father struck her head, pulled her hair, and dragged her into a bedroom in the presence of a three-year-old child. As a result of the incident, Mother obtained a no-contact order, and Father was charged with domestic battery and invasion of privacy. Father pled guilty and served eight months in the Department of Correction ("DOC"). After his release, he was legally prevented from contacting Mother to request time with

Child. He attempted to establish contact with Mother's relatives through social media but was unsuccessful.

[3] On April 24, 2018, the trial court conducted a final hearing on Mother's dissolution petition. A week later, the court issued a dissolution decree that included provisions setting Father's weekly child support obligation at $80 and "order[ing] that [Father] shall have no parenting time with [Child]." Appellant's App. Vol. 2 at 8.

[4] On May 29, 2018, Father filed a motion to correct error, challenging the sufficiency of the trial court's finding on the issue of parenting time and the sufficiency of evidence to support the denial of parenting time. Mother filed a statement in opposition to Father's motion as well as a proposed amended dissolution decree and a proposed order on the motion to correct error. The trial court adopted both of Mother's proposed orders and denied Father's motion to correct error. The court awarded Mother $385 in attorney's fees attributable to her opposition to Father's motion to correct error. Father now appeals. Additional facts will be provided as necessary.

## Discussion and Decision

### Section 1 – The trial court's amended findings on the issue of Father's parenting time are sufficiently specific.

[5] Father first asserts that the trial court erred by failing to make specific findings on the issue of his parenting time. At the outset, we note that Mother has failed to file an appellee's brief. When an appellee fails to submit a brief, we will not

undertake the burden of developing her arguments. *Meisberger v. Bishop*, 15 N.E.3d 653, 656 (Ind. Ct. App. 2014). Rather, we apply a less stringent standard of review and will reverse if the appellant establishes prima facie error. *Id.* Prima facie error is error "at first sight, on first appearance, or on the face of it." *Solms v. Solms*, 982 N.E.2d 1, 2 (Ind. Ct. App. 2012).

[6] Indiana Code Section 31-17-4-2 reads, in relevant part, "the court shall not restrict a parent's parenting time rights unless the court finds that the parenting time might endanger the child's physical health or significantly impair the child's emotional development." The trial court must make specific findings to support its parenting time order. *Perkinson v. Perkinson*, 989 N.E.2d 758, 765 (Ind. 2013). This means that the court must give a sufficient written explanation indicating why parenting time is being denied. *Rickman v. Rickman*, 993 N.E.2d 1166, 1169 (Ind. Ct. App. 2013). In other words, "a factual basis and a finding as to potential endangerment of [the child's] physical health or safety or significant impairment of his emotional development are necessary." *Id.*

[7] Here, the parties do not dispute that the parenting time finding in the trial court's original dissolution decree was not sufficiently specific. *See* Appellant's App. Vol. 2 at 8 ("The Court orders that [Father] shall have no parenting time with [Child]."). The court's amended decree, issued after Father filed his

motion to correct error, includes the following findings relevant to his parenting time:[1]

> 11. The Court finds that Father was convicted of Domestic Battery in the Presence of a Child as a Level 6 Felony on February 27, 2017, in the Wells Circuit Court, Cause Number 90C01-1606-F5-00024, and that Mother was the victim of the battery.

> 12. The Court also finds that Father is currently on parole for said conviction and that a No Contact Order is in effect in that Cause, preventing Father from contacting Mother, until the completion of Father's sentence.

> 13. The Court further finds that Father has not seen or had any contact with the child since November of 2016.

> 14. Based on the testimony presented, the Court finds that the exercise of parenting time by Father would endanger the child's physical health and significantly impair the child's emotional development.

> 15. The Court orders that Father shall have no parenting time with the parties' minor child.

*Id*. at 11.

[8] In evaluating these findings, we believe them to be sufficiently specific to indicate the trial court's reasons for its decision to deny Father parenting time.[2]

---

[1] The trial court's findings include different designations for Father and Mother. For consistency's sake, we refer to them as Father and Mother.

That said, we now turn to whether the trial court's ultimate decision to deny parenting time is contrary to law.

## Section 2 – The trial court's decision to deny Father parenting time with Child is contrary to law.

Father contends that even if the findings are sufficiently specific on the issue of parenting time, the trial court's ultimate decision to deny him parenting time is contrary to law. Here, Father's appeal comes to us following the denial of his motion to correct error. Generally, we review both parenting time decisions and denials of motions to correct error using an abuse of discretion standard. *Meisberger*, 15 N.E.3d at 656. We neither reweigh evidence nor reassess witness credibility. *Id.* We reverse only where the trial court's decision is clearly against the logic and effect of the facts and circumstances before it or where the court errs as a matter of law. *Id.*

Where, as here, a trial court has issued findings of fact and conclusions thereon, we apply a two-tiered standard of review, determining first whether the evidence supports the findings and second whether the findings support the judgment. *Sexton v. Sexton*, 970 N.E.2d 707, 710 (Ind. Ct. App. 2012), *trans. denied*. We will not set aside a trial court's findings unless they are clearly erroneous, meaning that our review of the record leaves us firmly convinced

---

[2] Father criticizes the amended findings because the trial court adopted Mother's proposed findings verbatim. A trial court's verbatim adoption of a party's proposed findings is not prohibited. *Country Contractors, Inc. v. A Westside Storage of Indianapolis, Inc.*, 4 N.E.3d 677, 694 (Ind. Ct. App. 2014). "Although we by no means encourage the wholesale adoption of a party's proposed findings and conclusions, the critical inquiry is whether such findings, as adopted by the court, are clearly erroneous." *Id.*

that a mistake has been made. *Id*. We give due regard to the trial court's opportunity to assess the credibility of witnesses and therefore consider only the evidence and reasonable inferences favorable to the judgment without reweighing the evidence or assessing witness credibility. *Nelson v. Nelson*, 10 N.E.3d 1283, 1285 (Ind. Ct. App. 2014). We do not defer to the trial court's conclusions of law and will find clear error if the court has applied an incorrect legal standard. *Sexton*, 970 N.E.2d at 710. Again, we note that because Mother has not filed an appellee's brief, Father need only establish prima facie error. *Meisberger*, 15 N.E.3d at 656.

[11]  "A decision about parenting time requires us to give foremost consideration to the best interests of the child." *Id.* In considering best interests, our courts and our legislature have recognized that the right of a noncustodial parent to visit his or her children is a "sacred and precious privilege." *Hatmaker v. Hatmaker*, 998 N.E.2d 758, 761 (Ind. Ct. App. 2013) (quoting *Appolon v. Faught*, 796 N.E.2d 297, 300 (Ind. Ct. App. 2003)). "Extraordinary circumstances must exist to deny parenting time to a parent, which necessarily denies the same to the child." *Perkinson*, 989 N.E.2d at 765.

[12]  As previously stated, our legislature has expressed a presumption in favor of parenting time by requiring that "the court *shall not* restrict a parent's parenting time rights unless the court finds that the parenting time *might* endanger the child's physical health or significantly impair the child's emotional development." Ind. Code § 31-17-4-2 (emphases added). "Even though the statute uses the word 'might,' this Court has previously interpreted the language

to mean that a court may not restrict parenting time unless that parenting time 'would' endanger the child's physical health or emotional development." *D.B. v. M.B.V.*, 913 N.E.2d 1271, 1274 (Ind. Ct. App. 2009) (citing *Stewart v. Stewart*, 521 N.E.2d 956, 960 n.3 (Ind. Ct. App. 1988), *trans. denied*).

[13] Similarly, the Indiana Parenting Time Guidelines stress that the child has the right to parenting time. Ind. Parenting Guideline 1(E)(5). Thus, our analysis must take into account the rights of both Father and Child to a mutual relationship. *See Perkinson*, 989 N.E.2d at 764 ("Not only does a noncustodial parent have a presumed right of parenting time, but the child has the correlative right to receive parenting time from the noncustodial parent because it is presumed to be in the child's best interest.")

[14] In evaluating the egregiousness of Father's incident of violence against Mother in light of the presumption in favor of parenting time, we find instructive the case of *D.B.*, where the mother was awarded physical custody of the couple's teenage children following an extremely contentious divorce. 913 N.E.2d at 1272-73. During the father's parenting time, he and the children often exhibited volatile behavior toward each other, e.g., food throwing, name calling, and accusations of father breaking a windshield and throwing one of the children into a movie theater seat. *Id*. at 1273. After the movie theater incident, the visits ceased. Eventually, after several cross-accusations between the father and mother, the father filed a contempt petition against the mother and requested mid-week parenting time. *Id*. Relying on testimony from the guardian ad litem concerning the children's wishes and ineffective counseling sessions, the trial

court eliminated the father's parenting time altogether. *Id.* The father appealed, and another panel of this Court reversed and recommended supervised visitation, reasoning that the past interaction between the father and the children "does not approach the egregious circumstances in which we have previously found that parenting time may be terminated, such as when a parent sexually molests a child." *Id.* at 1275. *See, e.g.*, *Duncan v. Duncan*, 843 N.E.2d 966, 972 (Ind. Ct. App. 2006) (visitation suspended "for a time" where substantiated evidence showed that father molested one child, threatened another with gun, showed no remorse, and refused counseling), *trans. denied*; *cf. K.B. v. S.B.*, 415 N.E.2d 749, 756 (Ind. Ct. App. 1981) (court permitted parenting time where evidence of molestation by father was conflicting).

[15] In its amended order, the trial court in this case identified three reasons for its decision to deny Father any parenting time: (1) that he was convicted of domestic battery against Mother; (2) that he is on parole and under a no-contact order as to Mother; and (3) that he has not had contact with Child for a year and a half. With respect to domestic battery, the record reflects a single incident in which Father struck Mother on the back of the head, pulled her hair, and dragged her into a bedroom. This incident occurred before Child was born, when Mother was pregnant with him. Mother testified that she had never seen Father be physically violent toward any other people. Tr. Vol. 2 at 8-9; *see also id.* at 19 (Father has four other children and is active in their lives). As for Father's lack of contact with Child, the record shows that he visited Child three or four times before he was incarcerated. He pled guilty to domestic battery

and invasion of privacy, served his time in the DOC, and was released on parole. At that time, the no-contact order as to Mother was still in place. Child, still a toddler, was in Mother's custody, meaning that Mother was the gatekeeper through which to contact Child. Thus, from a practical standpoint, contacting Child meant violating the protective order, which Father did not do. Rather, Father attempted to establish contact with Mother's relatives through social media, but they blocked him. In short, the isolated incident that precipitated Father's domestic battery conviction did not endanger Child, and the no-contact order has hindered Father in his efforts to contact Child.[3]

[16] Moreover, nothing in the amended order reflects the trial court's consideration and rejection of alternative options such as supervised parenting time with Child or contact by phone, mail, Skype, or other means of communication. Noncustodial parents convicted of far more serious offenses have nevertheless been afforded parenting time by phone or mail. *See, e.g.*, *Meisberger*, 15 N.E.3d at 654-55 (father served time for murder and theft, was released to probation, fathered a child, violated probation, and was remanded to the DOC).

[17] Simply put, even though the trial court's findings are specific enough to explain its reasons concerning parenting time, the court's ultimate decision to deny Father parenting time altogether is contrary to Indiana case law, statutory law, and Parenting Time Guidelines. As such, we conclude that Father has

---

[3] At the hearing, Father admitted to having prior convictions for invasion of privacy and marijuana dealing, but the trial court did not reference these in its amended order and did not rely on them in making its parenting time determination.

established prima facie error in the trial court's judgment. Consequently, we reverse and remand for further proceedings consistent with this decision.

## Section 3 – Father has failed to establish prima facie error in the trial court's fee award.

[18] Father also challenges Mother's $385 attorney's fee award attributable to her response in opposition to his motion to correct error. A trial court has broad discretion in awarding attorney's fees, and we reverse only where the court's award is clearly against the logic and effect of the facts and circumstances before it. *Barton v. Barton*, 47 N.E.3d 368, 377 (Ind. Ct. App. 2015), *trans. denied* (2016). The purpose of the award of attorney's fees is to ensure legal representation for a party in a dissolution proceeding who might not otherwise be able to afford an attorney. *Hartley v. Hartley*, 862 N.E.2d 274, 286-87 (Ind. Ct. App. 2007).

[19] Here, Father posits, without citation to authority, that because Mother conceded that the trial court's initial findings were insufficient concerning parenting time, she is not entitled to attorney's fees incurred in opposing his motion to correct error. Thus, he alleges, an attorney's fee award is improper because his motion to correct error was admittedly "meritorious" in this respect. Appellant's Br. at 10. In making this argument, he appears to conflate attorney's fee awards for bad faith or frivolous actions, *see* Ind. Code § 34-52-1-1, with attorney's fee awards in marital dissolution cases. *See* Ind. Code § 31-15-10-1 (trial court may order party to marital dissolution to pay reasonable amount for cost to other party to maintain or defend any proceeding connected

with the dissolution and for attorney's fees for legal services provided); *see also* *Barton*, 47 N.E.3d at 377 (factors trial court must consider when evaluating attorney's fees requests in marital dissolution proceedings include the parties' relative resources, economic condition, employability, and earnings potential).

[20] Father has failed to discuss or even cite the applicable statute or any cases interpreting the statute. As such, he has failed to establish prima facie error in the trial court's fee award. Accordingly, we affirm it.

[21] Affirmed in part, reversed in part, and remanded.

Vaidik, C.J., and Mathias, J., concur.