FILED

Jul 01 2025, 8:43 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



IN THE

# Court of Appeals of Indiana

Clorissa Williams,

*Appellant-Petitioner*

v.

James Williams,

*Appellee-Respondent*

---

July 1, 2025

Court of Appeals Case No.
24A-DR-726

Appeal from the Marion Superior Court

The Honorable Beth Jansen, Magistrate

Trial Court Cause No.
49D10-1406-DR-19459

---

**Opinion by Judge Weissmann**
Judge Mathias concurs.
Judge Scheele dissents with a separate opinion.

**Weissmann, Judge.**

[1] At the time of their divorce, Clorissa Williams (Mother) and James Williams (Father) were granted joint physical custody of their three-year-old son, J.W. (Child). Roughly seven years later, Father petitioned for custody modification after Mother notified the dissolution court of her intent to relocate with Child to Ohio. The court awarded Father primary physical custody of Child, and Mother appeals. After challenging some of the dissolution court's findings of fact, Mother argues that the court applied the wrong legal standard in rendering its judgment and that the judgment is not supported by the record. We affirm.

## Facts

[2] Mother and Father (collectively, Parents) divorced in 2016. Pursuant to their divorce decree, Parents were granted joint legal and physical custody of Child. Both Parents continued to live and work in Indianapolis, with Mother residing in Decatur Township and Father residing in Franklin Township. Child was eventually enrolled in Decatur Township schools, which he attended through the 2022-2023 school year.

[3] In the spring of 2023, Mother filed notice of her intent to relocate with Child to Columbus, Ohio, where Mother had accepted a new job and where Parents had extended family. In her notice, Mother requested that Father's parenting time be modified to the Indiana Parenting Time Guidelines applicable when distance is a major factor. Father objected to Mother's relocation and petitioned for

primary physical custody of Child. Father also requested, and the dissolution court granted, a temporary injunction prohibiting Mother from relocating with Child while the matter was pending.

[4] The dissolution court scheduled and continued a hearing on Parents' modification requests several times. In the meantime, Mother moved to Ohio and began her new job. During the summer of 2023, Child spent alternating weeks with Mother in Ohio and Father in Indiana. By agreement, Parents met in Richmond, Indiana, every other weekend to transfer Child back and forth.

[5] When the 2023-2024 school year began, Father learned that Child was no longer enrolled in his Decatur Township school. According to Mother, Child was automatically unenrolled after Mother informed the school that she no longer resided in Decatur Township. As Father still resided in Franklin Township, he quickly enrolled Child in a Franklin Township school. Meanwhile, Mother enrolled Child in an online Indiana school so he could attend school while in Ohio.

[6] Child began sixth grade at the Franklin Township school on August 7, 2023, one week after the semester began. Later that day, Mother picked up Child from school and took him to Ohio without notifying Father. A few days later, Father filed an emergency petition for Child's return. The dissolution court promptly held a hearing on Father's petition and ordered Mother to return Child to Indiana. The Court also ordered that Child attend school in person in Franklin Township and not leave Indiana except for Mother's parenting time.

[7] Prior to the hearing on Parents' modification requests, the dissolution court appointed a Guardian Ad Litem (GAL) for Child. The GAL interviewed Parents individually by phone and met with Child twice in person. She then prepared a report in which she summarized these meetings. Among other things, the GAL noted:

> [Child] again reiterated to me that he felt safe with both parents and that he just wished they lived close to one another so he could see them both equally. He indicated that he did not want to have to "pick" who he wanted to live with (I reassured him that he did not) but that if he was forced to pick he would say Father. He then unprompted indicated "my Mom keeps trying to get me to say I want to live with her so she can get it on video to show to you and I will say it because I don't want to hurt her feelings or upset her but that's not what I really want." When I asked him why he thought that was happening he indicated it was because Mother thought she "deserved" to have him because she "did more things for him than Father ever did."
>
> When asked, [Child] indicated that Father never spoke negatively about Mother but that Mother often would say negative things about Father that would hurt his feelings and upset him because he loves Father. He said Mother would often recount for him what she does [versus] what Father does and that (sic) then ask [Child] who he thinks does more for him. This reportedly makes [Child] feel uneasy and sad because he doesn't want to hurt anyone's feelings.

Exhs. p. 70.

[8] The GAL recommended that the dissolution court deny Mother's relocation with Child and maintain Parents' joint custody of Child if Mother returned to Indiana. If Mother stayed in Ohio, however, the GAL recommended that the dissolution court modify Mother's parenting time to the Parenting Time Guidelines applicable when distance is a major factor.

[9] The dissolution court conducted a modification hearing in January 2024, by which time Child was eleven years old. Mother, Father, the GAL, and Child's therapist all testified. The GAL's report was also admitted into evidence without objection. After the hearing, the dissolution court issued a custody modification order with sua sponte findings of fact and conclusions of law. Among other things, the court concluded that Mother relocated to Ohio in good faith and for a legitimate reason but that it was in Child's best interests to remain with Father in Indiana. The court therefore granted Father primary physical custody of Child.[1] Mother appeals.

## Discussion and Decision

[10] Indiana Code chapter 31-17-2.2 governs child custody modifications when one parent intends to relocate with the child. These Relocation Statutes place on the relocating parent the initial burden showing that "the proposed relocation is made in good faith and for a legitimate reason." Ind. Code § 31-17-2.2-5(e). If

---

[1] The court awarded Mother parenting time as follows: alternating weeks of the summer, one week at fall break, one week at winter break, and one weekend per month for all calendar months in which Mother does not otherwise have regular parenting time.

the relocating parent meets that burden, "the burden shifts to the nonrelocating parent to show that the proposed relocation is not in the best interest of the child." Ind. Code § 31-17-2.2-5(f).

[11] In addition to the parties' burdens of proof, the Relocation Statutes require a dissolution court to "take into account" the following factors (Relocation Factors) when determining whether to modify its custody order:

> (1)    The distance involved in the proposed change of residence.
>
> (2)    The hardship and expense involved for the nonrelocating individual to exercise parenting time or grandparent visitation.
>
> (3)    The feasibility of preserving the relationship between the nonrelocating individual and the child through suitable parenting time and grandparent visitation arrangements, including consideration of the financial circumstances of the parties.
>
> (4)    Whether there is an established pattern of conduct by the relocating individual, including actions by the relocating individual to either promote or thwart a nonrelocating individual's contact with the child.
>
> (5)    The reasons provided by the:
>
> > (A)    relocating individual for seeking relocation; and
> >
> > (B)    nonrelocating parent for opposing the relocation of the child.
>
> (6)    Other factors affecting the best interest of the child.

Ind. Code § 31-17-2.2-1(c). "The '[o]ther factors affecting the best interest of the child' include, by implication, the factors set forth for [initial] custody

determinations and [non-relocation-related] modifications under Indiana Code section 31-17-2-8." *T.L. v. J.L.*, 950 N.E.2d 779, 785 (Ind. Ct. App. 2011).

## I. Standard of Review

"[T]here is a well-established preference in Indiana 'for granting latitude and deference to our trial judges in family law matters.'" *Steele-Giri v. Steele*, 51 N.E.3d 119, 124 (Ind. 2016) (quoting *In re Marriage of Richardson,* 622 N.E.2d 178 (Ind. 1993)). "Appellate courts 'are in a poor position to look at a cold transcript of the record, and conclude that the trial judge, who saw the witnesses, observed their demeanor, and scrutinized their testimony as it came from the witness stand, did not properly understand the significance of the evidence.'" *Id.* (quoting *Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind. 2002)).

Where, as here, the dissolution court entered findings of fact and conclusions of law, the reviewing court will "not set aside the findings or judgment unless clearly erroneous." *Id.* at 123 (quoting *D.C. v. J.A.C.*, 977 N.E.2d 951, 953 (Ind. 2012)). Mother argues that several of the dissolution court's findings as well as its judgment are clearly erroneous. We find clear error in only one of the challenged findings and not in the judgment. Accordingly, we affirm.

## II. The Dissolution Court's Findings of Fact

Mother first challenges the dissolution court's findings of fact. "Findings of fact are clearly erroneous when the record lacks any evidence or reasonable

inferences from the evidence to support them." *Steele-Giri*, 51 N.E.3d at 125 (quoting *In re Paternity of Winkler*, 725 N.E.2d 124, 126 (Ind. Ct. App. 2000)). Mother argues that Findings 4, 20, 38, 44, 47 are not supported by the record.

## A. Findings 4 and 47

[15] Findings 4 and 47 of the dissolution court's custody modification order state:

> 4. The Parties are contentious and have a lengthy history of litigation. Upon discovering the Child had been unenrolled by Mother from school in Indiana and essentially relocated to Ohio, the Court, upon Father's Motion, ordered the Child to be immediately returned to Indiana on or about 8/16/23. This resulted in the child starting school in Indiana late.
>
> ***
>
> 47. The Court is also concerned by Mother's ability to follow Court orders – [she] unilaterally enrolled the child in school in Ohio, despite not having an order for the child to relocate[,] and has made unilateral medical decisions without involving Father in the process.

App. Vol. II, pp. 37, 43.

[16] Mother claims these findings are not supported by the record for three reasons. First, the evidence did not show that Mother personally unenrolled Child from his Decatur Township school, but rather that Child was automatically unenrolled after Mother informed the school that she no longer resided in Decatur Township. Second, despite Mother's relocation to Ohio, Child remained an Indiana resident through Father. Thus, according to Mother,

Child was never "relocated to Ohio." *Id.* at 37. Third, the evidence showed that Mother unilaterally enrolled Child in an online Indiana school, not "a school in Ohio." *Id.* at 43.

[17] We find the import of Findings 4 and 47 unaffected by Mother's technical distinctions. It is undisputed that Mother's relocation to Ohio proximately caused Child's unenrollment from his Decatur Township school. It is also undisputed that, in August 2023, Mother picked up Child from his Franklin Township school and took him to Ohio without notifying Father. The dissolution court reasonably characterized this as Mother "essentially" relocating Child. *Id.* at 43. Additionally, it is undisputed that Mother unilaterally enrolled Child in an online Indiana school so he could attend school while in Ohio.

[18] For these reasons, Findings 4 and 47 are not clearly erroneous.

## B. Finding 20

[19] Finding 20 of the dissolution court's custody modification order states:

> 20.      Mother is requesting that the child be able to relocate to Ohio with her, but [she] did not present a parenting time schedule for Father to the Court.

App. Vol. II, p. 40.

[20] Mother claims this finding is not supported by the record because her notice of relocation specifically proposed that Father's parenting be modified to the Indiana Parenting Time Guidelines applicable when distance is a major factor.

We agree. Because Mother proposed a parenting time schedule for Father in her notice of relocation, Finding 20 is clearly erroneous. Accordingly, we do not consider this finding when analyzing the dissolution court's judgment below.

## C. Finding 38

[21] Finding 38 of the dissolution court's custody modification order is set forth below, in context:

> 37. The child's therapist, Michael Kura, diagnosed the child with adjustment disorder, generalized anxiety disorder, and anger, after meeting with the child and Mother one (1) time.
>
> 38. The majority of the child's therapy appointments involved Mother being present for the session. The Court now believes that Mother was not just present at the sessions but that she was a dominating force during these sessions.
>
> 39. Mother began the therapy appointments by informing the therapist of what the child is currently struggling with, and often would reiterate that the child was abused and suffered from trauma related to Father's home. Mother also shared details about the pending litigation, including her request to relocate, her request for Father's parenting time to be modified, and her request for increased child support from Father.
>
> 40. The child disclosed only one (1) incident of abuse to the therapist, during their approximately ten (10) sessions. All other incidents reported to the therapist were made by Mother. Further, the child told the GAL that he is in therapy about "what Mom says [Father's ex-wife] did to me."

App. Vol. II, p. 42.

[22] Mother claims the record does not support Finding 38's assertion that she was present for the majority of Child's therapy sessions. In support of this claim, Mother points to evidence that she never attended any of Child's in-school therapy sessions. In context, however, Finding 38 concerns only Child's out-of-school therapy sessions with Dr. Kura. At the modification hearing, Mother admitted that she attended "all" of those sessions. Tr. Vol. II, p. 118. And Dr. Kura testified that he did not "get an opportunity to observe and talk to [Child] about his feelings outside of mother's presence." *Id.* at 209. The record therefore supports the dissolution court's finding that Mother was present for the majority of Child's therapy sessions with Dr. Kura.

[23] Mother also claims the record does not support Finding 38's assertion that she was a dominating force during Child's therapy sessions. In support of this claim, Mother emphasizes that Dr. Kura stated, "Absolutely not," when asked at the modification hearing whether he had "any indication that [Child] may say something differently if he were alone." *Id.* at 203. But Findings 39 and 40—which Mother does not challenge—suggest that Mother, not Child, reported Child's symptoms to Dr. Kura at each session and often made allegations of child abuse that Child did not substantiate. Additionally, Finding 39 shows that Mother specifically placed the custody dispute at issue in Child's therapy sessions. These findings support the dissolution court's stated belief that Mother was a dominating force during Child's therapy sessions.

[24] For these reasons, Finding 38 is not clearly erroneous.

## D. Finding 44

Finding 44 of the dissolution court's custody modification order states:

> 44.    The Court cannot, based upon the evidence presented, conclude that the child has been abused in either party's care and Mother's constant drumbeat of abuse can be considered a form of abuse in and of itself.

App. Vol. II, p. 43.

Mother claims this finding is not supported by the record, contending "there is substantial evidence of abuse" and "nothing . . . which indicates that Mother's concern for the Child's safety would be considered a form of abuse." Appellant's Br., p. 18. But the dissolution court's unchallenged Findings 32 through 35 state:

> 32.    All of Mother's allegations of abuse are from 2016 - 2019, are directed at Father's previous wife, and all began after Mother was charged with Battery Resulting in Bodily Injury, under Cause No. 49G08-1504-CM-013615, where the alleged victim was Father's ex-wife.
>
> 33.    The Department of Child Services . . . has investigated these allegations approximately six (6) times, and no claims of abuse have ever been substantiated.
>
> 34.    Father denies Mother's allegations of abuse and testified that the child was not abused by his ex-wife, but that there was one (1) incident in which his ex-wife spanked the child without Father's permission, in part resulting in Father ending his relationship with his ex-wife.

35.     Mother testified that the child suffers from several mental health diagnoses as a direct result of the alleged incidents of abuse. However, Mother did not seek therapy for the child until the fall of 2022, after Mother filed her Motion for Modification of Parenting Time and Child Support, and after she had determined she wanted to relocate to Ohio.

App. Vol. II, pp. 41-42.

[27]     These findings support the dissolution court's stated inability to conclude that Child was abused. And as previously discussed, the dissolution court's unchallenged Finding 40 shows that Child "told the GAL that he is in therapy about 'what Mom says [Father's ex-wife] did to me.'" *Id.* at 42. This finding supports the dissolution court's opinion that Mother's repeated yet unsubstantiated allegations of Child's abuse could themselves be considered abusive.

[28]     For these reasons, Finding 44 is not clearly erroneous.

## E.  Finding 48

[29]     Finding 48 of the dissolution court's custody modification order states:

48.     The Court finds that Mother's actions throughout this process do not lead it to believe that Mother would foster a healthy and ongoing relationship with the Father if the child were allowed to relocate.

App. Vol. II, p. 44.

[30]     Mother claims this finding is not supported by the record, contending "ample evidence was provided demonstrating how Mother would foster a healthy relationship with Father and the Child." Appellant's Br., p. 19. The record, however, is replete with evidence of troublesome conduct by Mother.

[31]     As previously discussed, Findings 4 and 47 show that Mother once picked up Child from his Franklin Township school and took him to Ohio without notifying Father. And despite sharing joint legal custody of Child with Father, Mother unilaterally enrolled Child in an online Indiana school so he could attend school while in Ohio.

[32]     Additionally, unchallenged Findings 45 and 46 state:

> 45.     The GAL found that Mother had shared information with the child about the pending litigation, requested that the child send her videos of him saying he wants to live with her in Ohio and has talked negatively about Father to the child.
>
> 46.     The Court has concerns about the validity and truthfulness of Mother's testimony, and is concerned that Mother, as a therapist herself, has attempted to coach the child in her favor during these proceedings.

App. Vol. II, p. 43.

[33]     Because these findings support the dissolution court's stated belief that Mother likely would not foster a healthy and ongoing relationship with Father if Child relocated to Ohio, Finding 48 is not clearly erroneous.

## III. The Dissolution Court's Judgment

[34] Mother next challenges the dissolution court's judgment. "A judgment is clearly erroneous when . . . the findings fail to support [it]" or "when the trial court applies the wrong legal standard to properly found facts." *K.I. ex rel. J.I. v. J.H.*, 903 N.E.2d 453, 457 (Ind. 2009). Mother argues both that the dissolution court applied the wrong legal standard and that the judgment is not supported by the record. We find neither argument persuasive.

## A. Legal Standard

[35] Mother contends the dissolution court applied the wrong legal standard because it failed to take into account all the Relocation Factors required by Indiana Code § 31-17-2.2-1(c). That statute does not require a dissolution court to enter specific findings on each factor, though such findings are prima facie evidence that the dissolution court took all the factors into account. Alternatively, this Court will presume the dissolution court took all the factors into account when evidence of each was presented at the modification hearing. *See In re Paternity of J.J.*, 911 N.E.2d 725, 731 (Ind. Ct. App. 2009); *Wolljung v. Sidell*, 891 N.E.2d 1109, 1113 (Ind. Ct. App. 2008).

[36] Mother specifically claims the dissolution court failed to take into account: (1) the hardship and expense involved for Father to exercise parenting time with Child (Parenting Time Factor); (2) the feasibility of preserving Father and Child's relationship through suitable parenting time (Relationship Factor); and

(3) Mother's established patterns of conduct to facilitate or thwart Father and Child's relationship (Conduct Factor). We disagree.

## 1. Parenting Time Factor

[37] The dissolution court did not make specific findings as to Parenting Time Factor, but the court was presented with evidence thereon. The record shows that Mother sought to relocate to Columbus, Ohio—approximately 170 miles from Father's Indianapolis home. In her notice of relocation, Mother proposed that she and Father meet at a location halfway between Columbus and Indianapolis to transfer Child for parenting time. And at the custody modification hearing, Father testified that he and Mother had done just that in the summer of 2023, while Parents' modification requests were pending. According to Father, he and Mother met in Richmond, Indiana, every other weekend to transfer Child back and forth. Father also testified that this transfer system was working and that he would be okay if it continued.

[38] This evidence indicates that there would be a lack of hardship involved for Father to exercise parenting time if Child relocated to Ohio. And Mother does not contend otherwise. She claims only that the record lacks evidence of the "expense" involved for Father to meet in Richmond to transfer Child back and forth. Ind. Code § 31-17-2.2-1(c)(2). While technically true, Father's lack of hardship in the transfer system suggests that its expense would not be an impediment to Father exercising parenting time with Child.

## 2. Relationship and Conduct Factors

[39]    The dissolution court made specific findings related to both the Relationship and Conduct Factors. As previously discussed, Finding 45 showed that Mother "shared information with the child about the pending litigation, requested that the child send her videos of him saying he wants to live with her in Ohio and has talked negatively about Father to the child." App. Vol. II, p. 43. Finding 46 showed that the dissolution court was "concerned that Mother, as a therapist herself, has attempted to coach the child in her favor during these proceedings." *Id.* And Finding 47 showed that the court was "also concerned by Mother's ability to follow [c]ourt orders," noting that Mother unilaterally made education and medical decisions for Child without involving Father—Child's joint legal custodian—or the dissolution court. *Id.* Based on these actions, the court stated in Finding 48 that it did not "believe that Mother would foster a healthy and ongoing relationship with the Father if the child were (sic) allowed to relocate." *Id.* at 44.

[40]    Mother did not challenge Findings 45 or 46, and Findings 47 and 48 are not clearly erroneous. These findings show a pattern of conduct by Mother to thwart Child's relationship with Father and a general infeasibility of preserving that relationship if Child relocated to Ohio. Although the findings do not expressly show that the dissolution considered "the financial circumstances of the parties" as they relate to the Relationship Factor, Ind. Code § 31-17-2.2-1(c)(3), the record reveals Mother's and Father's weekly incomes as $1,077 and

$1,918, respectively. Given the lack of hardship involved for Father to exercise parenting time and the general infeasibility of preserving Father and Child's relationship if Child relocated to Ohio, we fail to see how additional evidence of Parents' financial circumstances was necessary.[2]

[41] Moreover, the dissolution court expressly stated in its custody modification order that it "considered the relevant statutory factors" in making its decision. Appellant's App. Vol. II, p. 36. This statement deserves our credence, given the "latitude" afforded to trial judges in family law matters. *Steele-Giri v*, 51 N.E.3d at 124.

[42] On the facts of this case, we cannot say the dissolution court failed to take into account the Parenting Time, Relationship, and Conduct Factors. Accordingly, the court did not apply the wrong legal standard in rendering its judgment.

## B. Support for Judgment

[43] Finally, Mother contends the dissolution court's judgment is not supported by the record because the evidence presented at the modification hearing failed to show that granting Father primary physical custody of Child was in Child's best interest. "We set aside judgments only when they are clearly erroneous, and will not substitute our own judgment if any evidence or legitimate inferences

---

[2] We note that Mother made no specific argument on appeal regarding the "financial circumstances" component of the Relationship Factor. We also observe that Mother, in arguing that the dissolution court failed to take it into account that factor, effectively conceded that the record contains evidence thereon. Appellant's Reply Br., p. 7 (stating Father's approval of the parenting time transfer system "is evidence that Mother's relocation is more than feasible for Father").

support the trial court's judgment." *Id.* Thus, "it is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by appellant before there is a basis for reversal." *Id.* (quoting *Brickley v. Brickley*, 210 N.E.2d 850, 852 (Ind. 1965)).

[44] Among other things, Mother claims that Child relocating with her to Ohio was in Child's best interest because Mother had always been more involved than Father in Child's life. She also emphasizes Child's extended family in Ohio, highlights evidence that she could provide a safe and healthy home for Child there, and reasserts her allegations that Child was abused while in Father's care. These issues were all presented to the dissolution court, and Mother's reiteration of them here is simply a request to reweigh the evidence. That is not our role. *Kirk*, 770 N.E.2d at 307.

[45] Here, the dissolution court's findings of fact support its conclusion as to Child's best interest. Specifically, Findings 45 through 48 show a pattern of conduct by Mother to thwart Child's relationship with Father and a general infeasibility of preserving that relationship if Child relocated to Ohio. Unchallenged Findings 22 through 27 also state as follows:

> 22. The child, without prompting from the GAL, informed the GAL that he would prefer to see both parents equally, with Mother returning to Indiana. The child also informed the GAL that if he were forced to choose, he would choose to live with Father.

23.     The child has lived in Indianapolis, Indiana, his entire life.

24.     In Mother's home, the only people living in her home are Mother and the child. Mother has extensive family throughout the State of Ohio.

25.     In Father's home, the child has a half-sister, and two (2) soon-to-be stepsiblings, that he has a close relationship with. The child also refers to Father's fiancé[e] as Father's "wife," and he also has a good relationship with her.

26. The child, by his own choice, sleeps in a loft area in Father's home. Father, the GAL, and this Court do not see any cause for concern for the child's privacy with these sleeping arrangements, as the child can go into rooms (such as the bathroom) when the child needs privacy. The lack of a bedroom door does not concern the Court as much as a young, male child not having a consistent, healthy and robust relationship with his Father.

27.     The child is currently attending [a Franklin Township school], where he has made friends.

App. Vol. II, pp. 40-41.

[46]    Collectively, these findings support the dissolution court's judgment granting Father primary physical custody of Child. The judgment is therefore not clearly erroneous. *K.I. ex rel J.I.*, 903 N.E.2d at 457 ("A judgment is clearly erroneous when . . . the findings fail to support [it].").

## Conclusion

With the exception of Finding 20, the findings that Mother challenges are not clearly erroneous. Because those findings and others support the dissolution court's conclusion that Child relocating with Mother to Ohio was not in Child's best interest, the dissolution court did not clearly err by granting Father primary physical custody of Child. We therefore affirm the dissolution court's judgment.

Mathias, J., concurs.
Scheele, J., dissents with a separate opinion.

ATTORNEYS FOR APPELLANT

Alexander N. Moseley
Adrian J. Deneen
Dixon & Moseley, P.C.
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Angela Trapp
Trapp Law, LLC
Indianapolis, Indiana

**Scheele, Judge, dissenting.**

Indiana Code § 31-17-2.2-1(c) states "[t]he court *shall* take into account" five specifically enumerated factors and other factors affecting the child's best interests. (emphasis added). I agree with the majority that specific findings are not required on every factor. However, as other panels of this court have held, there must be—at a minimum—some evidence on each factor in the record. *In re Paternity of J.J.*, 911 N.E.2d 725, 731 (Ind. Ct. App. 2009); *Wolljung v. Sidell*, 891 N.E.2d 1109, 1113 (Ind. Ct. App. 2008). Because I do not see any evidence in the record regarding the "expense involved for the nonrelocating individual to exercise parenting time" or "the feasibility of preserving the relationship between the nonrelocating individual and the child through suitable parenting time . . . including consideration of the financial circumstances[,]" I respectfully dissent. I.C. § 31-17-2.2-1(c)(2)-(3).

"When the word 'shall' appears in a statute, it is construed as mandatory rather than directory unless it appears clear from the context or the purpose of the statute that the legislature intended a different meaning." *Clark v. Kenley*, 646 N.E.2d 76, 78 (Ind. Ct. App. 1995), *trans. denied*. "Given the specific command of the legislature . . . the trial court is required to take into account all of the [Relocation Factors]. The court cannot do so without such evidence in the record." *Wolljung*, 891 N.E.2d at 1113.¶

Here, the only mention of Parents' finances in the record is a singular recitation of their incomes. As the majority notes, it is "technically true" that there is

simply no evidence of the expense involved for Father to exercise parenting time. *Supra* ¶ 38. It is also technically true that there is no evidence of the parties' financial circumstances relevant to the feasibility of preserving Father's and Child's relationship through suitable parenting time. I view this lack of evidence as more than a mere technicality: it is a critical deficiency with respect to the statutory requirements.

[51] Further, I find the trial court's language that it "considered the relevant statutory factors" unpersuasive. Appellant's App. Vol. II p. 36. Through the lens of our standard of review, I cannot make a reasonable inference that the trial court took into account all of the Relocation Factors where the record was devoid of evidence regarding portions of two of the factors. *See Wolljung*, 891 N.E.2d at 1111 (In reviewing a court's modification of custody, "we consider only the evidence most favorable to the judgment and any reasonable inferences *from that evidence*." (emphasis added)).

[52] I would closely follow the analysis in *Wolljung* and *Paternity of J.J.* and conclude that the trial court abused its discretion by failing to take into account all of the Relocation Factors. I would, therefore, reverse and remand with instructions to conduct another hearing and to hear evidence on each of the statutory factors; and I would instruct the trial court to order parties to maintain the status quo, absent exigent circumstances, pending the outcome of a new hearing.